Todd Carpenter (CA Bar No. 234464)
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER LLP**
1350 Columbia Street, Suite 603
San Diego, California 92101
(619) 762-1900
*tcarpenter@carlsonlynch.com*

Jeffrey Kaliel (CA Bar No. 238293)
Sophia Goren Gold (CA Bar No. 307971)
**KALIEL PLLC**
1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Hassan Zavareei (CA Bar No. 181547)
**TYCKO & ZAVAREEI LLP**
1828 L St. NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900
*hzavareei@tzlegal.com*

[Additional counsel on signature page]

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNA MCGOVERN, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK, N.A.,<br><br>Defendant. | Case No: **'18CV1794 CAB JMA**<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing;<br>2) Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Reyna McGovern ("Plaintiff" or "McGovern"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## **INTRODUCTION**

1.     Plaintiff brings this action on behalf of herself and classes of all similarly situated consumers against Defendant US Bank, N.A. ("US Bank"), arising from its routine practices of (a) assessing *two* out-of-network Automated Teller Machine ("ATM") fees ("OON Fees") on out-of-network ATM withdrawals preceded by a balance inquiry; and (b) assessing overdraft fees ("OD Fees") on transactions that did not actually overdraw the account.

2.     Both practices violate the contractual agreement governing the relationship between US Bank and its customers.

3.     **First**, US Bank's ATM Fee revenue has risen dramatically in recent years and is one of the primary drivers of Bank fee income. This litigation concerns those fees assessed on transactions made on "out-of-network" ATMs, *i.e.* ATMs not owned or operated by US Bank or a partner of US Bank.  Under specific circumstances set forth in the US Bank Deposit Account Agreement, US Bank assesses OON Fees on its account-holders who withdraw funds from ATMs not owned by US Bank.

4.     This lawsuit does not challenge US Bank's right to charge an OON Fee, but instead challenges US Bank's imposition of *two* OON Fees on the same transaction. Specifically, when US Bank accountholders check their account balance prior to withdrawing funds at an out-of-network ATM, US Bank charges its accountholders two OON Fees—one for the balance inquiry and one for the withdrawal.

5.     For a simple domestic out-of-network ATM withdrawal, for example, McGovern paid a total of $7.95 in fees. This $7.95 was comprised of: (1) a $2.95 fee to the non-bank affiliated owner that operated the out-of-network ATM; (2) a $2.50 fee to US Bank for checking the balance, and (3) another $2.50 fee to US Bank for the withdrawal.

CLASS ACTION COMPLAINT

6.     US Bank's uniform practice of charging two OON Fees per cash withdrawal preceded by a balance inquiry is unfair and deceptive, violates representations in US Bank's account documents, and constitutes a breach of contract. Indeed, US Bank's account documents fail to provide notice of the possibility of being charged two fees by US Bank during one transaction at an out of network ATM.

7.     **Second**, at the moment debit card transactions are authorized on an account with positive funds to cover the transaction, US Bank immediately makes an internal notation deducting the amount from the account and purportedly setting aside the funds to cover that specific transaction.  As a result, and with limited exceptions, customers' accounts *always* have sufficient available funds to cover these transactions throughout their entire lifecycle.

8.     However, US Bank still assesses $36 OD Fees on many of these transactions, in violation of its contractual promises not to do so.

9.     Despite purporting to put aside sufficient available funds for debit card transactions, US Bank charges OD Fees on those same transactions if they settle—days later—against a negative balance ("Authorize Positive, Purportedly Settle Negative Transactions" or "APPSN Transactions").  *By this manipulation, US Bank turns one potential OD Fee into several.*

10.     Here is how it works.  US Bank maintains a running account balance in real time, tracking funds consumers have for immediate use.  This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instant they are made.  When a customer makes a purchase with a debit card, US Bank promises to sequester the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's account balance.  Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

11.     Indeed, the entire purpose of the immediate debit and hold of funds is to ensure there are enough funds in the account to pay the transaction when it settles, as

CLASS ACTION COMPLAINT

discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

12.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has been reduced to account for earlier debit card transactions. This means that subsequent transactions may incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

13.     Still, despite keeping those held funds off-limits for other transactions, US Bank improperly charges OD Fees on APPSN Transactions even though, by their very nature, such transactions always have sufficient available funds for payment because the funds have been held and sequestered by US Bank.

14.     The Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "deceptive" when:

> a financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged.

Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing the fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

15.     There is no justification for these practices, other than to maximize US Bank's OD Fee revenue.  APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance.  But US Bank is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year.  But US Bank is not content with these millions in OD Fees.  Instead, it seeks millions *more* in OD Fees on APPSN Transactions.

16.     In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that US Bank will only charge OD Fees on transactions when there are insufficient funds to pay a given transaction.

17.     In short, US Bank is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

18.     Plaintiff and other US Bank customers have been injured by US Bank's improper practices to the tune of millions of dollars bilked from their accounts in clear violation of their agreements with US Bank. On behalf of herself and the classes, Plaintiff seeks damages, restitution and public injunctive relief for US Bank's breach of contract and violations of California's consumer protection laws.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than US Bank.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because US Bank is subject to personal jurisdiction here and regularly conducts business in this District, and because Plaintiff was assessed OON Fees in this district.

## PARTIES

21.     Plaintiff McGovern is a citizen of California and a resident of San Diego, CA.

22.     US Bank is a national bank with its headquarters and principal place of business located in Cincinnati, OH. Among other things, US Bank is engaged in the business of providing retail banking services to consumers, including McGovern and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. US Bank operates banking centers, and thus conducts business, throughout the State of California, including within this District.

///

///

///

CLASS ACTION COMPLAINT

# FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I.    US BANK CHARGES TWO OON FEES PER WITHDRAWAL

### A.    Mechanics of Domestic Out-of-Network ATM Withdrawals

23.    When consumers use ATMs not owned by their own bank, federal law requires the owners of those out-of-network ATMs to inform users of the amount of the usage fees charged by the ATM owner.

24.    Thus, it is standard at ATMs in the United States that when a consumer uses an ATM not owned by his or her home bank, a message is displayed on the screen stating that usage of the ATM will cost a specified amount to proceed with a withdrawal of funds, and that such a fee is in addition to a fee that may be assessed by a consumer's financial institution for use of the ATM.

25.    That message generally appears only after a user has decided to perform a cash withdrawal and enters the amount of cash he or she would like to withdraw.

26.    Through repeated exposure to such fee warning messages, consumers are accustomed to being warned of fee assessments at out-of-network ATMs, and to being provided with the opportunity to decide whether the fees charged are reasonable—before proceeding with their cash withdrawal.

27.    When US Bank charges an OON Fee on the balance inquiry and an OON Fee for the withdrawal, US Bank exploits consumers' reasonable expectation that US Bank will provide a free opportunity to check the account balance before proceeding with a cash withdrawal from an out of network ATM.

28.    Indeed, in the United States, many ATM display screens immediately ask consumers if they would like to "check their account balance" before proceeding with their transaction.

29.    Upon information and belief, ATM screens do not typically disclose that a balance inquiry alone will incur a usage fee, and indeed ATMs in the United States do not usually charge usage fees for balance inquiries.

30.    Repeated exposure to such messages is partly responsible for building the reasonable consumer understanding that a balance inquiry is a common lead-in to a withdrawal, a mere first step to the real business at hand, an informational exercise offered by the ATM to help inform the cash withdrawal.

31.    Thus, in most circumstances, there is no warning at the ATM that a balance inquiry preceded by a withdrawal will incur two fees from the consumer's home bank.

32.    If a bank is going to charge such a conscience-shocking fee, it must fully and fairly disclose such a fee in its account documentation. US Bank did the opposite—providing express and implied indications that use of a non-US Bank ATM would result in *one* fee of $2.50.

### B.    US Bank's Account Contract

33.    McGovern has a US Bank checking account, which is governed by US Bank's standardized account agreement.

34.    US Bank issues debit cards and ATM cards to its checking account customers, including McGovern, which allow its customers to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both US Bank and non-US Bank ATMs.

35.    Against the backdrop of the reasonable consumer expectations described *supra*, US Bank's disclosures deceive consumers and reinforce the understanding that no fee will be assessed for a balance inquiry.

36.    US Bank's disclosures also reinforce the common sense presumption that there can be no balance inquiry fee when such an inquiry is made in conjunction with a cash withdrawal at the same ATM.

37.    Pursuant to US Bank's standard account agreement:

FEES

We will charge you fees for electronic fund transfers in accordance with the information found in our Consumer Pricing Information brochure. (This brochure can be obtained by contacting a U.S. Bank branch or calling

800.872.2657.) The fees may be changed at any time, subject to our giving you any notice required by law.

ATM Surcharges. When you use an ATM that is not identified as ours with the U.S. Bank name, you may be charged a fee by the ATM operator or any network used to complete the transfer.

Deposit Account Agreement.

38.     The separate Consumer Pricing Information document ("Fee Schedule") states:

U.S. Bank ATM Transaction                    no charge
Non-U.S. Bank ATM Transaction[1]             $2.50

[1]Non-U.S. Bank ATM owners will apply a surcharge fee unless they participate in the MoneyPass® Network. To find MoneyPass ATM locations, please visit www.moneypass.com.

Fee Schedule.

1.     Moreover, US Bank's two-page Simple Snapshot, which purportedly explains "Common Checking Account Fees" says merely:

**ATM Fees**
Cash Withdrawal – U.S. Bank ATMs  $0
Cash Withdrawal – Non-U.S. Bank ATMs    $2.50

Simple Snapshot, attached as Ex. 1.

2.     US Bank's Simple Snapshot indicates US Bank only assesses ATM fees for cash withdrawals at non-U.S. Bank ATMs and completely omits that US Bank will assess ATM fees for other transactions at non-US Bank ATMs, including balance inquiries, and that US Bank will charge *two fees* for checking a balance prior to withdrawing cash at an out of network ATM.

3.     In short, US Bank represents that (1) the ATM or the network owning or operating the ATM may charge fees; and (2) US Bank will assess a *single* "Non-U.S. Bank ATM Transaction" fee of $2.50.

CLASS ACTION COMPLAINT

4.     US Bank's disclosures do nothing to disabuse consumers of the reasonable understanding that a balance inquiry will not incur a separate fee when it precedes a cash withdrawal at the same ATM, and never state outright that such a fee will be assessed. Again, the Fee Schedule says nothing more than "$2.50 per transaction," and the Simple Snapshot merely says $2.50 per cash withdrawal.

5.     When a cash withdrawal is made at the same time as a balance inquiry at an out-of-network ATM, US Bank's account documents do not disclose to consumers that those functions count as multiple transactions triggering multiple separate fees of $2.50, rather than a single "transaction" triggering a single OON Fee assessment of $2.50.

6.     Reasonable consumers like McGovern do not understand that a balance inquiry which precedes a withdrawal could result in two OON Fees.

7.     Because consumers do not reasonably expect to be charged a separate, second fee when they check their balance in connection with a withdrawal, US Bank and its customers, including McGovern, contractually agree that should the customer, including McGovern, make a balance inquiry and a cash withdrawal, the customer, including McGovern, will pay a fee of no more than $2.50.

8.     McGovern and other customers never contractually agreed to pay a separate fee if the customer, including McGovern, makes a balance inquiry in conjunction with a withdrawal.

**C.     Plaintiff's Domestic Out-of-Network ATM Withdrawals**

9.     On May 20, 2018, McGovern withdrew $20 in cash from an out-of-network ATM at a CVS store in San Diego. Following her transaction, McGovern was surprised to learn that she was assessed, in addition to the cash withdrawal surcharge paid to the out-of-network ATM provider ($2.95), a separate $2.50 fee from US Bank for making an out-of-network balance inquiry, and an additional $2.50 fee from US Bank for making an out-of-network cash withdrawal. In sum, US Bank charged McGovern two (2) OON Fees of $2.50 each—one for the withdrawal and one for the "balance inquiry."

CLASS ACTION COMPLAINT

10.     US Bank's contract does not permit the bank to charge a $2.50 balance inquiry fee when a balance inquiry precedes a cash withdrawal at the same out-of-network ATM.

11.     McGovern would not have checked her balance prior to withdrawing funds at the out of network ATM had she known she would be charged two OON Fees by US Bank for doing so.

12.     If US Bank were enjoined from assessing *two* fees when a consumer makes a balance inquiry prior to a withdrawal from a non-US Bank ATM, and instead only assessed one fee as indicated in the governing documents, McGovern would check the balance of her US Bank account prior to withdrawing funds from a non-US Bank ATM in the future.

## II.     US BANK CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

### A.     Mechanics of a Debit Card Transaction

13.     A debit card transaction occurs in two parts.  First, authorization for the purchase amount is instantaneously obtained by the merchant from US Bank.  When a merchant physically or virtually "swipes" a customer's debit card, the card terminal connects, via an intermediary, to US Bank, which verifies that the customer's account is valid and that sufficient funds are present to "cover" the transaction amount.

14.     At this step, if the transaction is approved, US Bank immediately decrements the funds in a consumer's account and sequesters funds in the amount of the transaction, but does not yet transfer the funds to the merchant.

15.     Once again, the very purpose of the debit hold is to ensure there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

16.     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.  This is referred to in the banking industry as "posting" or "settling"—something which usually occurs the same day or within one to three business days after the transaction was completed with the merchant.

17.     There is no change—no impact whatsoever—to the balance of "available funds" in an account when posting or payment of a transaction that settles in the same amount for which it was authorized occurs.  That is because the amount of the transaction was deducted from available funds at the time of approval.

**B.  US Bank Account Documents**

18.     Checking accounts with US Bank were, at all relevant times, governed by US Bank's standardized contract for deposit accounts, the material terms of which are drafted by US Bank, amended by US Bank from time to time at its convenience and complete discretion, and imposed by US Bank on all of its customers (the "Deposit Agreement").

19.     In plain language the checking account contract documents discussing OD Fees promise that US Bank will place an immediate hold or "preauthorization" on debit card transactions; will use an "available balance" to determine overdrafts; and that "available balance" already accounts for preauthorized debit card transactions.

> We reserve the right to decide the order of the items we will pay and which items will be returned (if any). Our posting order may not be the same as the order in which you conducted a transaction and could result in overdraft fees, if you do not have available funds at the time the item is paid. Generally, we post the following three transaction types after the close of each business day in the following order: 1. Deposits we receive before the daily cut off time will be posted before any withdrawals. 2. Your non-check withdrawals will be posted in date/time order, based on the date and time associated with each transaction. A date and time (if one is available) will be assigned to each transaction based on one of the following: (1) **when the transaction was preauthorized (for example a debit card or ATM transaction was approved)**; or (2) when the transaction was processed by U.S. Bank (for

CLASS ACTION COMPLAINT

example an ACH, or Bill Pay transaction for which there is no pre-authorization). If a date and time is not available, these transactions are posted to your account after all transactions with a valid date and time or check number are complete, and posted to your account in order of amount, starting with the lowest transaction amount first (frequently referred to as low-to-high).

[…]

INSUFFICIENT FUNDS AND OVERDRAFTS

"Account Balance" means the funds in your account, including deposits and withdrawals made to date. Not all your transactions will be immediately reflected. As a result, only part of this balance may be available for withdrawal.

"Available Balance" means the amount of money that can be withdrawn at a point in time. **The Available Balance will be less than the Account Balance when there are pending transactions such as:**

  • Funds held from deposits: These funds have been deposited, but are not yet fully available for withdrawal or transfer. Once these funds are available, they will be reflected in the Account Balance.

  • **Funds held for debit card authorizations: This reflects merchant-authorized requests for payment, when the final charge has not been submitted by the merchant.** Once submitted by the merchant and processed by us, these charges will be reflected in the Account Balance.

  • Any other holds on funds in your account.

[…]

**"Insufficient funds" means you do not have enough available funds in your account to pay the withdrawals you are attempting from that account. Having insufficient funds in your account could lead to returned items, which refers to any withdrawal or transfer that we return because it exceeds your Available Balance on a given day.** Examples of withdrawals that could be returned may include any checks, ACH transactions, online bill payments, or any other debit from your account where we return it because it is for more than the Available Balance you have in your account at the time the transaction is presented to your account. We reserve the right to pay an insufficient funds withdrawal and overdraw your account, which may result in an Overdraft Paid Fee, or return the insufficient funds withdrawal, which may result in an Overdraft Returned Fee. Even if we've paid insufficient funds items before, we are not required to do it in the future.

CLASS ACTION COMPLAINT

**"Overdraft" means a transaction has caused the Available Balance on an account to become a negative number.** An overdraft can happen, for example,

    • by writing a check without enough money in a checking account to pay the check, and we pay the item;

    • **by making a withdrawal from your account that exceeds your Available Balance;**

    • by making a deposit, withdrawing money based on the credit received from that deposit, and then having that deposit reversed because the deposited item is later returned to us unpaid;

    • by withdrawing money from your account and not having enough money left to pay any related charges posted to the account;

    • when funds are credited to your account in error and you use the funds, and the reversal of the credit results in an overdraft;

or  • when fees such as monthly maintenance fees are charged and you do not have sufficient funds to cover.

**Our Options: You do not have the right to withdraw funds that exceed the Available Balance on your account. When an item of yours overdraws an account, we can either pay or return the item.** You cannot choose which items we pay or return, except as identified in your selection of "Overdraft Handling" (as identified below).

**Our Fees: We charge an Overdraft Paid Fee for each item or transaction we pay that causes the Available Balance to become negative or occurs while the Available Balance is negative on the checking account.**

In addition to Standard Overdraft Coverage, you have the following options outlined below. ATM and Debit Card Overdraft Coverage: Upon opening your U.S. Bank Consumer checking OR money market account, you will receive a notice advising you of your choice to "Opt In" or "Opt Out" of ATM and Debit Card Overdraft Coverage. OPT IN If you "opt-in" (or say yes), you allow U.S. Bank to authorize and pay ATM and everyday debit card transactions (purchases made with your debit card on a day-to-day basis) that may cause the Available Balance in your account to become negative. If this happens we may charge an Overdraft Paid Fee.

Deposit Account Agreement.

CLASS ACTION COMPLAINT

20.     Such overdraft fees cannot occur where the amount of the transaction has been sequestered by US Bank, which is what happens with APPSN Transactions.

### C. **The Account Documents Misconstrue US Bank's True Overdraft Fee and Debit Processing Practices**

21.     The account documents do not accurately describe US Bank's true debit card processing and OD Fee practices in at least two ways.

22.     <u>First</u>, and most fundamentally, US Bank charges OD Fees on debit card transactions for which there are sufficient available funds when they are made.

23.     US Bank assesses OD Fees on APPSN Transactions that ***do*** have sufficient funds to pay them throughout their lifecycle.

24.     Those available funds are sequestered at the moment a debit card transaction is approved by US Bank.

25.     US Bank's practice of charging OD Fees even where sufficient funds exist to pay a transaction violates a contractual promise not to do so.  This discrepancy between US Bank's actual practice and the contract causes consumers like McGovern to incur more OD Fees than they should.

26.     Sufficient funds for APPSN Transactions are deducted immediately, consistent with the practice of many banks.

27.     Because these deductions take place upon initiation, they cannot be re-debited later.  But that is what US Bank does when it re-debits the account later at the time of posting.

28.     In reality, US Bank's actual practice is to reduce the balance for the debit hold for all purposes favorable to US Bank, such as charging OD Fees on other transactions coming in to post, but to then deplete those held funds and still charge an OD Fee for the debit transaction that was subject to the hold.

29.     At the time of settlement, however, the available balance *does not change at all* for these transactions previously authorized.  As such, US Bank cannot then charge an

CLASS ACTION COMPLAINT

OD Fee on such a transaction because the balance has not been rendered insufficient due to the pseudo-event of settlement.

30.     This discrepancy between US Bank's actual practices and the contract causes consumers to incur more OD Fees than they should.

31.     <u>Second</u>, for debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined.  According to the "must-pay" network rule, once US Bank authorizes a debit card transaction, it has no choice but to pay it.  It cannot change its mind later.

32.     According to the contract, APPSN Transactions rightly cannot incur overdraft fees.

33.     In sum, there is a yawning gap between US Bank's practices as described in the account documents and US Bank's practices in reality.

**D. <u>Reasonable Consumers Understand Debit Card Transactions Are Debited Immediately</u>**

34.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions.  That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions).  If funds are immediately debited, then they are necessarily available to be applied to the debit card transactions for which they are debited.

35.     US Bank was and is aware that this is precisely how its accountholders reasonably understand debit card transactions to work.

36.     US Bank well knows that many consumers prefer debit cards for these very reasons.  Consumer research indicates that consumers prefer debit cards as a budgeting device; because they do not allow debt like credit cards do; and because the money comes directly out of a checking account.

37.     Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that

CLASS ACTION COMPLAINT

"[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear."[1]

38.     Further, Consumer Action informs consumers: "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full."

39.     This is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States has increased exponentially in recent years and, with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM."[2]

40.     Not only have consumers increasingly substituted cash with debit cards, but they believe that a debit card purchase is the functional equivalent to a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

41.     US Bank was aware of a consumer perception that debit transactions reduce balances at the time of authorization and its account agreement only supports this perception.

**E. Plaintiff's Overdraft Fee Experience**

42.     On December 22, 2018, Plaintiff was assessed ~~an~~ two OD Fee~~s~~ on ~~a~~ debit card transaction that was initiated on an earlier date and at a time when Plaintiff had sufficient funds in her account to cover the transactions. Pursuant to US Bank's account documents,

---

[1] *See* https://www.consumer-action.org/english/articles/understanding_debit_cards/ (last visited
Aug. 2, 2018).

[2] Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*,
MARKETWATCH, Mar. 23, 2016 (available at http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23).

the funds for each transaction were sequestered to pay the items when they posted, but US Bank's software systems were instead programmed to allow the funds to be depleted so additional profit-generating OD Fees could be assessed.

43.    Plaintiff McGovern disputes that US Bank was authorized to charge OD Fees against debit card transactions that had been subject to debit holds, because the money was supposed to be sequestered and set aside by US Bank.

44.    US Bank assessed the OD Fee on the held transaction even though it was contractually required to sequester funds for those transactions at the time they were authorized.  US Bank's systems and software has been programmed to systematically assess improper OD Fees.

## CLASS ALLEGATIONS

45.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

46.    The proposed Classes are defined as:

All US Bank checking account holders in California who within the applicable statute of limitations were assessed an OON Fee for a balance inquiry at an out-of-network ATM when the balance inquiry was made in conjunction with a withdrawal (the "OON Class").

All US Bank checking account holders in California who, within the applicable statute of limitations, were charged an overdraft fee on a debit card transaction that was authorized at the time when the account balance exceeded the amount of the transaction (the "APPSN Class").

47.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

48.    Excluded from the Classes are US Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which US Bank has a controlling interest, all customers

CLASS ACTION COMPLAINT

who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to US Bank's records.

50.     The claims of Plaintiff are typical of the claims of the Classes. Plaintiff's claims, like all OON Class members, seek relief for being charged multiple OON Fees for the same ATM usage. Moreover, Plaintiff's claims, like all APPSN Class members, seek relief for being charged OD Fees on transactions that did not actually overdraw their accounts.  Furthermore, the factual basis of US Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

51.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

52.     Among the questions of law and fact common to the Classes are whether:

      a.  US Bank charged OON Fees for balance inquiries made in conjunction with a withdrawal;

      b.  US Bank breached its contract by charging OON Fees for balance inquiries made in conjunction with a withdrawal;

      c.  US Bank improperly charged overdraft fees on APPSN Transactions; and

      d.  US Bank violated the UCL and CLRA;

      e.  Whether Plaintiff and the Class were damaged by US Bank's conduct and if so, the proper measure of damages.

53.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful policies and practices related to US Bank's Account

CLASS ACTION COMPLAINT

Agreement with consumers.  Plaintiff has suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

54.     Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of US Bank, no member of the Classes could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and US Bank's misconduct will proceed without remedy.

56.     Even if the members of the Classes themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of the OON Class)

57.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

58.     Plaintiff and US Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in US Bank's Account Agreement and related documentation.

59.     No contract provision authorizes US Bank to charge a separate OON Fee for a balance inquiry made in conjunction with a withdrawal.

60.     Therefore, US Bank, by imposing fees beyond those it was contractually permitted to impose, breached the terms of its Account Agreement.

61.     Under the law of California good faith is an element of every contract pertaining to the assessment of bank Fees.  Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

62.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

63.     US Bank has breached the covenant of good faith and fair dealing in the contract through its OON fee practices as alleged herein.

64.     Specifically, US Bank harms consumers by abusing its contractual discretion in a number of ways which no reasonable customer would anticipate.

65.     Reasonable consumers like McGovern do not understand that a balance inquiry which precedes a withdrawal counts as two "transactions" that could result in two OON Fees.

CLASS ACTION COMPLAINT

66.     US Bank abuses its contractual discretion by categorizing a balance inquiry which precedes a withdrawal as a separate "transaction" for purposes of assessing two OON Fees.

67.     Plaintiff and members of the class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

68.     Plaintiffs and members of the Class have sustained damages as a result of US Bank's breach of the Account Agreement.

## SECOND CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of the APPSN Class)

69.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

70.     Plaintiff and US Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in US Bank's Account Agreement and related documentation.

71.     No contract provision authorizes US Bank to charge OD Fees on APPSN Transactions.   Rather, the contract only authorizes US Bank to charge OD Fees on transactions for which sufficient funds did not exist at the time of authorization.

72.     Therefore, US Bank breached the terms of its account documents by charging OD Fees on transactions that were authorized at a time when sufficient funds were present in the account and a debit hold for the amount of funds was put in place.  Through account manipulations that were no fault of the customer, an allegedly insufficient balance was concocted when the transactions were settled, resulting in an improper OD Fee.

73.     Under the law of California good faith is an element of every contract pertaining to the assessment of bank Fees.  Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.

Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

74. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

75. US Bank has breached the covenant of good faith and fair dealing in the contract through its overdraft policies as alleged herein.

76. Specifically, US Bank harms consumers by abusing its contractual discretion in a number of ways which no reasonable customer would anticipate.

77. US Bank uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume funds previously sequestered for APPSN Transactions.

78. US Bank uses this contractual discretion to extract OD Fees on transactions that no reasonable consumer would believe could cause OD Fees.

79. Plaintiff and members of the class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

80. Plaintiff and members of the Class have sustained damages as a result of US Bank's breach of the Account Agreement.

### THIRD CLAIM FOR RELIEF
**Violation of California Unfair Competition Law**
**Business and Professions Code § 17200**
**(On Behalf of the OON Class)**

81. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

82.     US Bank's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, et seq.

83.     The UCL prohibits, and provides civil remedies for, unfair competition.  Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

84.     By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

85.     US Bank's conduct violates the UCL by charging OON Fees for a balance inquiry that precedes a withdrawal at an out-of-network ATM.

86.     US Bank failed to properly disclose these practices and affirmatively and knowingly misrepresented its OON Fee practices in its contract with consumers. Such misrepresentations and omissions misled Plaintiff and are likely to mislead the public. Specifically, US Bank failed to disclose that a balance inquiry that immediately precedes a withdrawal will incur an additional OON Fee. US Bank also failed to disclose that consumers may be charged multiple OON Fees by US Bank for a single use of an out of network ATM.

87.     Plaintiff McGovern and the class relied on US Bank's misrepresentations and omissions in that Plaintiff McGovern viewed a version of US Bank's Simple Snapshot in effect at the time she opened her account and understood this document to mean she would not be charged a separate fee for checking her balance prior to withdrawing funds at an out-of-network ATM. Had Plaintiff known she would be charged a separate OON fee by US Bank for checking her balance prior to withdrawing funds at an out-of-network ATM, she would not have checked her balance at the out-of-network ATM prior to withdrawing funds.

CLASS ACTION COMPLAINT

88.    In addition, US Bank's conduct was unfair insofar as it was not motivated by any business or economic need or rationale. The harm and adverse impact of US Bank's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

89.    The harm to Plaintiff and Class Members arising from US Bank's unfair practices relating to the imposition of OON Fees outweighs the utility, if any, of those practices.

90.    US Bank's unfair business practices relating to OON Fees as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

91.    US Bank's conduct was substantially injurious to consumer in that they have been forced to pay OON Fees, which are not disclosed in their contract with US Bank.

92.    As a result of US Bank's violations of the UCL, Plaintiff and members of the Class have paid, and/or will continue to pay OON Fees and thereby have suffered and will continue to suffer actual damages.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**Violation of California Unfair Competition Law**
**Business and Professions Code § 17200**
**(On Behalf of the APPSN Class)**

93.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

94.    US Bank's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, et seq.

95.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

CLASS ACTION COMPLAINT

96.   By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

97.   US Bank's conduct violates the UCL by charging OD fees on APPSN transactions.

98.   Specifically, US Bank's conduct was not motivated by any business or economic need or rationale. The harm and adverse impact of US Bank's imposition of OD fees on APPSN transactions was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

99.   The harm to Plaintiff and Class Members arising from US Bank's unfair practices relating to the imposition of OD Fees on APPSN transactions outweighs the utility, if any, of those practices.

100.   US Bank's unfair business practices relating to OD Fees as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

101.   US Bank's conduct was substantially injurious to consumers in that they have been forced to pay OD Fees, which are not disclosed in their contract with US Bank.

102.   As a result of US Bank's violations of the UCL, Plaintiff and members of the Class have paid, and/or will continue to pay OD Fees and thereby have suffered and will continue to suffer actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

a.   Declaring US Bank's OON Fee and OD Fee policies and practices to be wrongful, unfair and a breach of contract;

CLASS ACTION COMPLAINT

b.   Restitution of all relevant OON Fees and OD Fees paid to US Bank by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

c.   Disgorgement of the ill-gotten gains derived by US Bank from its misconduct;

d.   Actual damages in an amount according to proof;

e.   Statutory, punitive and exemplary damages, as permitted by law;

f.   Pre-judgment interest at the maximum rate permitted by applicable law;

g.   An order on behalf of the general public enjoining US Bank from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint and any other acts and practices proven at trial;

h.   Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

i.   Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: August 2, 2018                 Respectfully submitted,


*/s/ Todd D. Carpenter*
Todd Carpenter (CA Bar No. 234464)
Carlson Lynch Sweet Kilpela & Carpenter
1350 Columbia Street, Suite 603
San Diego, California 92101
(619) 762-1900
*tcarpenter@carlsonlynch.com*

Jeffrey Kaliel (CA Bar No. 238293)
Sophia Goren Gold (CA Bar No. 307971)
KALIEL PLLC

CLASS ACTION COMPLAINT

1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Hassan Zavareei (CA Bar No. 181547)
TYCKO & ZAVAREEI LLP
1828 L St. NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900
*hzavareei@tzlegal.com*

Jeff Ostrow (*pro hac vice* to be filed)
Kopelowitz Ostrow Ferguson Weiselberg Gilbert
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
(954) 525-4100
*ostrow@kolawyers.com*

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT