UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNA MCGOVERN, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>U.S. BANK N.A.,<br><br>        Defendant. | Case No.: 18-CV-1794-CAB-LL<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>[Doc No. 17] |

This matter is before the Court on a motion to compel arbitration filed by Defendant U.S. Bank N.A. ("USB"). The motion has been fully briefed, and the Court held a hearing on January 23, 2019. For the following reasons, the motion is granted.

**I. Background**

Plaintiff Reyna McGovern initiated this putative class action lawsuit on August 2, 2018, with a complaint asserting claims for breach of contract and violation of California's unfair competition law, California Business and Professions Code § 17200 *et seq.* ("UCL"), arising out of USB's practices concerning the assessment of two types of fees. The complaint refers to these fees as "OON Fees" and "OD Fees." The OON Fee claims arise out of USB's alleged practice of charging two fees for use of out-of-network ("OON") automated teller machines ("ATMs") when an accountholder checks her account balance and then withdraws funds. The OD Fee claims arise out of USB's alleged practice of charging an overdraft fee for transactions made with a debit card at a time when sufficient

1

funds were available because in the time between when the debit card transaction is made and when it settles, an intervening transaction on the checking account reduces the amount of funds in the account to less than the amount of the prior debit card transaction. The complaint calls these transactions "Authorize Positive, Purportedly Settle Negative Transactions" or "APPSN Transactions."

McGovern alleges that these duplicate OON Fees and OD Fees are not permitted by the account agreements governing her and other account-holders' relationships with USB. The complaint defined two classes, one for California account-holders who were assessed duplicate OON fees when checking their balances before making an OON ATM withdrawal, and one for California account-holders who were charged an OD Fee on a debit card transaction that was authorized at a time when the account balance exceeded the amount of the transaction. The complaint asserted separate breach of contract and UCL claims on behalf of each class, and sought a declaration that USB's OON Fee and OD Fee policies were unfair and a breach of contract, restitution of the improperly assessed fees, disgorgement, actual, statutory and punitive damages, and "an order on behalf of the general public enjoining [USB] from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in [the] complaint. . . ." [Doc. No. 1 at 26-27.]

USB responded to the original complaint with a motion to compel arbitration based on Plaintiff's agreement to arbitrate in her deposit account agreement. [Doc. No. 12.] Plaintiff, in turn, filed a first amended complaint ("FAC") [Doc. No. 14] instead of opposing the motion to compel. The FAC added an "Injunctive Relief Class" consisting of all persons in California eligible to open a consumer checking account. The FAC asserted the same four claims as the original complaint (two breach of contract claims and two UCL claims) but added the Injunctive Relief Class as a party to the UCL claims. The FAC also removed the prayer for an "order on behalf of the public" from the original complaint and added a prayer for a "public injunction that enjoins [USB] from continuing to misrepresent its OD Fee policy governing APPSN transactions and OON Fee policies in

its publicly available account documents and marketing materials such as its 'Account Agreement,' 'Fee Schedule,' and the 'Simple Snapshot.'" [Doc. No. 14 at 34.]

USB once again moves to compel arbitration of this lawsuit pursuant to the arbitration provision in the Deposit Account Agreement between Plaintiff and USB. That arbitration provision states:

> ARBITRATION
>
> This section does not apply to any dispute in which the amount in controversy is within the jurisdictional limits of, and is filed in, a small claims court. . . . These arbitration provisions shall survive closure of your account or termination of all business with us. If any provision of this section is ruled invalid or unenforceable, this section shall be rendered null and void in its entirety.
>
> Arbitration Rules: In the event of a dispute relating to or arising out of your account or this Agreement, you or we may elect to arbitrate the dispute. . . . Without regard to which arbitration body is selected to resolve the dispute, any disputes between you and us as to whether your claim falls within the scope of this arbitration clause shall be determined solely by the arbitrator, and not by any court.
>
> Arbitration can only decide our or your dispute and cannot consolidate or join claims of other persons who may have similar claims. There will be no authority or right for any disputes to be arbitrated on a class action basis.
>
> Effects of Arbitration: If either of us chooses arbitration, neither of us will have the right to litigate the dispute in court or have a jury trial. In addition, you will not have the right to participate as a representative or member of any class of claimants, or in any other form of representative capacity that seeks monetary or other relief beyond your individual circumstances, pertaining to any dispute subject to arbitration. There shall be no authority for any claims to be arbitrated on a class action or any other form of representative basis. Arbitration can only decide your or our claim, and you may not consolidate or join the claims of other persons who may have similar claims, including without limitation claims for public injunctive or other equitable relief as to our other customers or members of the general public. Any such monetary, injunctive, or other equitable relief shall be limited solely to your accounts, agreements, and transaction with us. Notwithstanding the foregoing, any question as to the validity and effect of this class action waiver shall be decided solely by a court of competent jurisdiction, and not by the arbitrator.

[FAC Ex. A at 18-19.]

## II. Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA") "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), and it "reflects an 'emphatic federal policy' in favor of arbitration," *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932 (9th Cir. 2013) (quoting *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012)). Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 2019 WL 122164, at *3, __ S.Ct. __ (Jan. 8, 2019). The FAA's "centerpiece provision makes a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting 9 U.S.C. § 2). It also permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (*emphasis* in original). In a motion to compel arbitration, the court may not review the merits of the action but must limit its inquiry to "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F3d 1052, 1058 (9th Cir. 2013) (*en banc*) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If both requirements are satisfied, the court must enforce the arbitration agreement in accordance with its precise terms. *See Concepcion*, 563 U.S. at 344 ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements

4

18-CV-1794-CAB-LL

according to their terms . . . ."). "[T]he FAA requires courts to honor parties' expectations." *Id.* at 351.

Because of the strong policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors*, 473 U.S. at 626.

### III. Discussion

There is no disagreement here that the terms of the arbitration agreement encompass this dispute and that it requires bilateral arbitration of McGovern's individual claims, while precluding her from representing a class or seeking public injunctive relief. The only dispute is whether the California Supreme Court's holding in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), that waivers of the right to seek public injunctive relief in any forum are unenforceable, renders the arbitration agreement as a whole void and unenforceable.

USB makes two arguments in its motion: (1) that *McGill* does not apply because the FAC does not actually seek public injunctive relief, as that term is defined in *McGill*; and (2) that *McGill* is preempted by the FAA. McGovern opposes, arguing that *McGill* applies and is not preempted, and that pursuant to the "poison pill" language at the end of the first paragraph of the arbitration provision, the arbitration provision is null and void in its entirety.

#### A. California's *McGill* Rule

In *McGill*, the California Supreme Court held that under the UCL, a private plaintiff who has suffered injury in fact and has lost money or property as a result of a violation of the UCL can file a lawsuit on her own behalf that "seeks, as one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.'" *McGill*, 2 Cal. 5th at 959 (citing *Broughton*

*v. Cigna Healthplans*, 21 Cal. 4th 1066, 1077 (1999)). The purpose of such injunctive relief is "to remedy a public wrong, not to resolve a private dispute, and any benefit to the plaintiff requesting such relief likely would be incidental to the general public benefit of enjoining such a practice." *Id.* at 961 (internal citations, quotation marks, and ellipses omitted). "By definition, the public injunctive relief available under the UCL . . . is primarily for the benefit of the general public." *Id.*

The court then concluded that an arbitration provision that purported to waive McGill's statutory right to seek public injunctive relief under the UCL was invalid and unenforceable. Relying on California Civil Code section 3513, a "Maxim of Jurisprudence" stating that "[a]ny one may waive the advantage of law intended solely for his benefit [,b]ut a law established for a public reason cannot be contravened by a private agreement," the court held that because "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under [the UCL] would seriously compromise the public purposes [the UCL was] intended to serve," a waiver of the right to request public injunctive relief in any forum is invalid and unenforceable under California law. *Id.* at 961. Finally, the *McGill* court considered whether the rule it established is preempted by the FAA and found it is not. *Id.* at 961-66.

### B. Does the *McGill* Rule Apply Here?

USB argues that Plaintiff cannot rely on *McGill* to avoid the consequences of the arbitration agreement because Plaintiff does not actually seek public injunctive relief in this case. Several courts have recently held that *McGill* did not apply to invalidate an arbitration provision that included a public injunction waiver when the plaintiff did not actually seek public injunctive relief. *See, e.g., Johnson v. J.P. Morgan Chase Bank, N.A.*, Case No. EDCV 17-2477 JGB (SPx), 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018) ("Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for <u>public</u> injunctive relief.") (<u>emphasis</u> in original); *Wright v. Sirius XM Radio, Inc.*, No. SACV 16-01688 JVS (JCGx), 2017 WL 4676580, at *9 (C.D. Cal. Jun. 1, 2017) (holding that a request for an injunction

6

18-CV-1794-CAB-LL

against making misrepresentations and omissions in connection with lifetime subscriptions are "vague, generalized allegations [that] do not request public injunctive relief," and that "any benefit to the public is merely 'incidental'"). The rationale of these cases for finding that the plaintiff did not actually seek public injunctive relief is persuasive and equally applicable to the relief McGovern seeks here.

"Public injunctive relief 'is for the benefit of the general public rather than the party bringing the action.'" *Kilgore*, 718 F.3d at 1061 (quoting *Broughton*, 21 Cal. 4th at 1082). "Merely declaring that a claim seeks a public injunction, however, is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*." *Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *2 (N.D. Cal. Oct. 25, 2017). "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955.

Here, any public injunctive relief sought by McGovern is merely incidental to her primary aim of gaining compensation for injury. *Cf. Croucier v. Credit One Bank, N.A.*, Case No. 18cv20-MMA(JMA), 2018 WL 2836889, at * (S.D. Cal. Jun. 11, 2018) (noting that the plaintiff's inclusion of a claim for public injunctive relief only after the defendant moved to compel arbitration and without the inclusion of new facts supporting such claim, and his reliance on the public relief claim as a means to avoid arbitration, supported a finding that the purpose of the relief sought was unique to the plaintiff). McGovern's "claims arise from breaches of bilateral contracts between [McGovern] and [USB], whereas the claims in *McGill* arose from representations in advertising and marketing materials." *Johnson*, 2018 WL 4726042, at *7. Plaintiff attempts to avoid this result by characterizing her account agreement and supporting documents as "marketing materials" simply because copies of those agreements can be located on USB's website. Yet, regardless of how the account agreement is characterized, any injunction related to these materials would primarily benefit only USB account-holders who would otherwise incur the duplicate OON Fees or OD Fees in the future.

McGovern's argument that the FAC seeks public injunctive relief also does not help her because she lacks Article III standing to seek such relief. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Thus, McGovern must demonstrate that she has constitutional standing to seek public injunctive relief. That the California legislature gave a plaintiff the right to seek public injunctive relief through the UCL is irrelevant because just as the United States Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *Spokeo v. Robins*, 136 S.Ct. 1540, 1548 (2016) (citation omitted), neither can the California legislature or California courts.

Based on the definition provided by the California Supreme Court, a claim for "public injunctive relief" cannot satisfy the three elements of Article III standing: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The problem lies with the third element—redressability. Public injunctive relief is "relief that by and large benefits the general public and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public." *McGill*, 2 Cal. 5th at 955 (internal citations and quotation marks omitted). "The evident purpose of such relief, therefore, is not to resolve a private dispute, but to remedy a public wrong." *Magana v. DoorDash, Inc.*, __ F.Supp. 3d __, Case No. 18-cv-03395-PJH, 2018 WL 5291988, at *6 (N.D. Cal. Oct. 22, 2018) (citing *McGill*, 2 Cal. 5th at 961). Relief that is not intended to benefit the plaintiff cannot be said to redress any injury allegedly suffered by the plaintiff. Because public injunctive relief does not redress *the plaintiff's* injury, individuals lack the Article III standing required to seek such relief in federal court.[1]

---

[1] At the hearing McGovern argued she has Article III standing because she will benefit from the requested relief that also benefits the "general public" class she alleges to represent. This admission demonstrates

To be clear, this is not to say that McGovern, if she proves her case, would not be entitled to injunctive relief. Rather, because the primary purpose of any such injunctive relief would be to rectify the wrongs USB committed against McGovern, it would be *private* injunctive relief. *See McGill*, 2 Cal. 5th at 955 ("Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief."). Any relief to the public as a result of such an injunction would only be incidental in the same way that an injunction against false advertising primarily remedies the imminent and actual threat of future harm to a plaintiff due to the false advertising. *See Davidson*, 889 F.3d at 972 (holding that an injunction on an alleged false advertisement would remedy the plaintiff's injury by requiring the defendant to make truthful representations on which the plaintiff could reasonably rely); *see also Magana*, 2018 WL 5291988, at *7 (holding in labor and employment case that the claims have the primary purpose and effect of preventing harm to the defendant's employees and that any benefit to the public would be derivative and ancillary to that benefit). Indeed, it is questionable whether the general public would receive any benefit from the injunction Plaintiff seeks, as the general public has not been subject to and will not be subject to any of the allegedly improper fees that constitute Plaintiff's injury. Even current USB account-holders who do not use OON ATMs or overdraw their accounts would not benefit from the requested injunction.

To summarize, McGovern does not actually seek public injunctive relief in the FAC, and because a plaintiff cannot have constitutional standing to seek public injunctive relief under the UCL, any injunctive relief to which McGovern is entitled in this lawsuit can only be private injunctive relief. Yet this result is not necessarily fatal to McGovern's argument

---

that the injunctive relief McGovern seeks does not fit *McGill*'s definition of "public injunctive relief," and is instead "private injunctive relief—i.e., relief that primarily resolves a private dispute between the parties and rectifies individual wrongs, and that benefits the public, if at all, only incidentally." *McGill*, 2 Cal. 5th at 955.

that the arbitration agreement is null and void. Although this conclusion (that McGovern does not seek public injunctive relief) is consistent with *Johnson* and *Wright*, the Court is less persuaded by those opinions' ultimate holdings, rendered without any analysis, that a plaintiff's failure to seek public injunctive relief necessarily renders *McGill* inapplicable. There does not appear to be any dispute here that the public injunction waiver language in the arbitration provision is encompassed by *McGill* or that a finding that *McGill* applies to such language would render the entire arbitration agreement null and void if *McGill* is not preempted by the FAA. Further, neither the courts in *Johnson* or *Wright* explain why the question of whether an arbitration agreement is null and void based on *McGill* depends on the form of relief sought by a plaintiff.[2] Nevertheless, because, as discussed below, the *McGill* rule is preempted by the FAA, the Court need not address this question.

### C. The *McGill* Rule Is Preempted By the FAA

The FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. This "saving clause" "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). However, "nothing in [the saving clause] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 343. Thus, for the saving clause to apply and invalidate an agreement to arbitrate, the contract defense must: (1) be a ground for revoking

---

[2] At the hearing, USB argued that pursuant to the doctrine of constitutional avoidance, upon finding that the plaintiff is not asserting a claim for public injunctive relief, the court should not reach the question of the enforceability of a contract provision not at issue, and therefore avoid addressing the preemption issue. Although the courts in *Johnson* and *Wright* presumably followed this path, this court is not convinced this doctrine applies here and will therefore address preemption.

any contract; and (2) not obstruct the FAA's objectives. Here, as discussed below, neither requirement is satisfied.

### 1. The *McGill* Rule Is Not a Ground for Invalidating Any Contract

In *McGill*, the California Supreme Court characterized the contract defense in question as "a law established for a public reason cannot be contravened by a private agreement." *McGill*, 2 Cal. 5th at 962 (citing Cal. Civ. Code § 3513). Thus, because according to the California court, the provision in the UCL allowing individuals to seek public injunctive relief is a "law established for a public reason," any waiver of such a right in a contract is unenforceable. *Id.* at 961. The *McGill* court's characterization of the rule as a generally applicable contract defense, however, is merely an artifice that ignores the practical reality of its characterization, as well as the actual holding in *McGill*.

First, section 3513 falls under a part of the California Civil Code titled "Maxims of Jurisprudence."[3] The code itself cautions that these "maxims of jurisprudence . . . are intended not to qualify any of the foregoing provisions of [the Civil] Code, but to aid in their just application." Cal. Civ. Code § 3509. Thus, "California's maxims of jurisprudence are not legal requirements, but rather 'aid[s] in construing the proper application of common-law principles or of code sections.'" *Sheedy Drayage Co. v. Teamsters Union Local No. 2785*, No. C-12-6204 EMC, 2013 WL 791886, at *3 (N.D. Cal. Mar. 4, 2013) (quoting *Daniels v. McPhail*, 93 Cal. App. 2d 479, 482 (Cal. Ct. App. 1949)). As the California Supreme Court explained in a case after *McGill*, these maxims of jurisprudence are "interpretive canon for construing *statutes*." *Nat'l Shooting Sports Found., Inc. v. State*, 5 Cal. 5th 428, 433 (2018) (*emphasis* added). In other words, section 3513 is meant to aid in the construction of statutes; it is not a contract defense at all. Moreover, "[e]ven if the maxims of jurisprudence were used in contract interpretation, they

---

[3] Other maxims of jurisprudence include trite platitudes such as "[t]he law respects form less than substance," "[i]nterpretation must be reasonable," "[t]hat is certain which can be made certain," "[t]hings happen according to the ordinary course of nature and the ordinary habits of life," and "[t]he law has been obeyed." *See* Cal. Civ. Code §§ 3528, 3538, 3542, 3546, 3548.

cannot override the intent of the parties in forming the contract as embodied in the plain language of the contract." *Sheedy Drayage*, 2013 WL 791886, at *4 (citing *Moore v. Cal. State Bd. of Accountancy*, 2 Cal. 4th 999, 1012 (1992)). Considered in this context, the *McGill* court's preemption analysis does not pass muster.[4]

Second, the "contract defense" created by *McGill* could be used to invalidate the waiver of any rights under any law because, although individuals may realize private benefits from a law, every law is established for a public reason. Moreover, the rule would effectively preclude settlement of any case where the plaintiff asserts a UCL claim because any settlement would almost certainly include a release of all rights to relief under the UCL, including the right to seek public injunctive relief, based on the claims made in the lawsuit. Surely, the California Supreme Court does not truly intend for the rule it pronounced in *McGill* to invalidate any settlement agreement in a UCL case seeking public injunctive relief.

Finally, the *McGill* court's actual intent is better reflected in the rule it pronounced as the actual holding in the case, which explicitly references arbitration clauses:

> the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law.

*McGill*, 2 Cal. 5th at 961. This rule is more precise, and it does not apply to *any contract*.

Even accepting the *McGill* court's characterization of section 3513 as a contract defense, the *McGill* court's finding that the defense is not preempted relies on an incorrect interpretation of the FAA's saving clause, which appears at the end of section 2 of the FAA. Section 2 of the FAA states, in its entirety:

---

[4] Indeed, other "maxims of jurisprudence" arguably would require enforcement of the arbitration clause, including: (1) "[h]e who consents to an act is not wronged by it," § 3515; (2) "[a]cquiescence in error takes away the right of objecting to it," § 3516; and (3) "[p]rivate transactions are fair and regular" § 3545. Why section 3513 is trumps these maxims is unexplained in *McGill*.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Thus, an arbitration provision is "valid, irrevocable, and enforceable," unless "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

*McGill* transforms this last clause to mean that an arbitration provision may be invalidated on a ground that could also be used to revoke a contract that does not have an arbitration provision. *McGill*, 2 Cal. 5th at 962 (noting that "a provision in *any* contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL . . . is invalid and unenforceable under California law"). "Any contract," however, means exactly that—*any* contract. The frequently given examples for the generally applicable defenses to any contract that might trigger the saving clause include fraud, duress, and unconscionability. These defenses could be applied to any contract, regardless of the terms therein. The grounds for invalidating the arbitration clause in question in *McGill* (either the specific *McGill* rule or the broader maxim of jurisprudence upon which it is premised) come into play only in contracts involving waivers of rights. Therefore, neither the *McGill* rule itself, nor the maxim of jurisprudence upon which it is purportedly premised, are grounds for the revocation of *any* contract, as is required to implicate the FAA's saving clause. *See* 9 U.S.C. § 2.

In reality, McGovern's position is no different than that of the individuals seeking to avoid arbitration in *Epic*. Like them, McGovern does not:

> suggest that [her] arbitration agreements were extracted, say, by an act of fraud or duress or in some other unconscionable way that would render *any* contract unenforceable. Instead, [she] object[s] to [her] agreements precisely because they require individualized arbitration proceedings . . . . And by attacking (only) the individualized nature of the arbitration proceedings,

13

[McGovern's] argument seeks to interfere with one of arbitration's fundamental attributes.

*Epic*, 138 S.Ct. at 1622 (*emphasis* in original).[5] Thus, like the parties challenging arbitration in *Epic*, McGovern's argument for invalidating her arbitration agreement "is one that impermissibly disfavors arbitration" despite sounding in illegality pursuant to *McGill* and California Civil Code section 3513. Accordingly, because the *McGill* rule would not render *any* contract unenforceable, it does not implicate the FAA's saving clause.

### 2. The *McGill* Rule Obstructs the FAA's Objectives

Even if the *McGill* rule is considered applicable to *any* contract, it does not survive preemption because it is an obstacle to the FAA's objectives. The Supreme Court has consistently held that the FAA preempts states' attempts to limit the scope of arbitration agreements or rules that preclude parties from agreeing to an individualized bilateral arbitration. In *Concepcion*, the Court held that a bar on most class action waivers in arbitration agreements was preempted by the FAA.[6] 563 U.S. at 352. In *Italian Colors*, the Court reiterated this principle, holding that the FAA did not permit courts to invalidate arbitration agreements on the ground that they do not permit class arbitration of a claim

---

[5] It is difficult to reconcile *Epic* with *Sakkab v. Luxxotica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015), on which McGovern relies in her opposition. In *Sakkab*, the majority held that the saving clause applied to California's rule barring waiver of claims under California's Public Attorneys General Act of 2004 ("PAGA") because the rule applied "regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." *Sakkab*, 803 F.3d at 432. The majority further held that this rule did not conflict with the FAA's purposes. *Id.* at 433. *Epic*, however, reversed a Ninth Circuit opinion issued after *Sakkab* in which the Ninth Circuit majority had held, using reason similar to (and even citing) *Sakkab*, that concerted action waivers violate the National Labor Relations Act (the "NLRA") and this result did not run afoul of the FAA in part because "[w]hen an illegal provision not targeting arbitration is found in an arbitration agreement, the FAA treats the contract like any other; the FAA recognizes a general contract defense of illegality." *See Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985 (9th Cir. 2016), *reversed by Epic*, 138 S.Ct. 1612. If a federal law (the NLRA) that applies regardless of the existence of an arbitration provision does not implicate the FAA's saving clause to avoid preemption, presumably a state law (the *McGill* rule or Cal. Civ. Code § 3513) that applies regardless of the existence of an arbitration provision does not implicate the saving clause either.

[6] The Court also noted that "California's courts have been more likely to hold contracts to arbitrate unconscionable than other contracts." *Concepcion*, 563 U.S. at 343.

when individualized arbitration would be cost-prohibitive. 578 U.S. at 231, 239. Finally, in *Epic*, the Court specifically noted that the individualized nature of arbitration proceedings is one of its "fundamental attributes." 138 S.Ct. at 1622. In so holding, the Court noted that "Congress has instructed federal courts to enforce arbitration agreements according to their terms—*including terms providing for individualized proceedings*." *Id.* at 1619 (*emphasis* added).

The *McGill* rule is merely the latest "device or formula" intended to achieve the result of rendering an arbitration agreement against public policy. *See Epic*, 138 S.Ct. at 1623 (noting that "*Concepcion* teaches that we must be alert to new devices and formulas" for declaring arbitration against public policy). Although the *McGill* court characterizes its rule as concerning only a private plaintiff's right to relief under California's consumer protection statutes, the relief in question in *McGill* and here, public injunctive relief, is relief that would otherwise be unavailable if not for the California statutes. California's interest in providing a private plaintiff an avenue to seek public relief does not override the FAA's support for streamlined bilateral arbitration concerning only the plaintiff's claims and relief that would make plaintiff whole.

Justice Kagan's dissent in *Italian Colors* highlights why, based on *Concepcion*, California's creation of a public interest in injunctive relief sought by an individual cannot serve to prevent parties from agreeing to private bilateral individualized arbitration. In *Concepcion*, the Supreme Court reversed the Ninth Circuit's holding that an arbitration provision that disallowed class action procedures was unconscionable under California law announced in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005). *Concepcion*, 563 U.S. at 352. As Justice Kagan explained about *Concepcion*:

> the state law in question made class-action waivers unenforceable even when a party could feasibly vindicate her claim in an individual arbitration. The state rule was designed to preserve the broad-scale "deterrent effects of class actions," not merely to protect a particular plaintiff's right to assert her own claim. 563 U.S., at ——, 131 S.Ct., at 1745. Indeed, the Court emphasized that the complaint in that case was "most unlikely to go unresolved" because AT & T's agreement contained a host of features ensuring that "aggrieved

15

> customers who filed claims would be essentially guaranteed to be made whole." *Id.*, at ——, 131 S.Ct., at 1753 (internal quotation marks and brackets omitted).

*Italian Colors*, 570 U.S. at 251-52 (Kagan, J., dissenting). These same principles apply here. Like the *Discover Bank* rule, the *McGill* rule makes public injunctive relief waivers unenforceable regardless of the fact that public injunctive relief is, by definition, unnecessary to make a plaintiff whole in an individual arbitration. *McGill* merely attempts to circumvent *Concepcion*'s holding that class action waivers in arbitration agreements can be enforced by giving individuals the unwaivable right to seek wide-ranging injunctive relief not specific to their individual injuries without following the procedural requirements for a class action.

In sum, the effect of the *McGill* rule is to prohibit a streamlined bilateral arbitration of McGovern's claims related to her individual injuries. This effect runs counter to the overarching purpose of the FAA, pursuant to which the "liberal federal policy favoring arbitration" outweighs "any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 344, 346 (stating that the "overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"). California "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 351. If federal law does not secure "a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration," *Italian Colors Rest.*, 570 U.S. at 234-35, a California law cannot create a nonwaivable opportunity to vindicate state policies either in federal court or arbitration *without* satisfying the procedural strictures of Rule 23. Because the *McGill* rule would expressly prohibit parties from private streamlined bilateral arbitration seeking relief intended to redress only the plaintiff's claims, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress," *Concepcion*, 563 U.S. at 353 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), and is preempted by the FAA.

### D. Stay of Proceedings During Arbitration

USB asks the Court to stay this case pending completion of the arbitration. McGovern argues that if the Court intends to grant the motion to compel, it should dismiss this case to allow for an immediate appeal. Section 3 of the FAA, however, "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *Concepcion*, 563 U.S. at 344 (quoting 9 U.S.C. § 3); *see also Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996) ("The [FAA] requires a court to stay an action whenever the parties to the action have agreed in writing to submit their claims to arbitration."). "A motion to stay, therefore, is mandatory and must be granted as to all matters within the scope of the arbitration agreement." *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016) (citation omitted). Accordingly, the court must stay the case in light of its finding that McGovern's claims are subject to the terms of the arbitration provision in her account agreement.

### IV. Disposition

For the foregoing reasons, it is hereby **ORDERED** the motion to compel arbitration is **GRANTED**. It is further **ORDERED** that this case is **STAYED** pending completion of the arbitration. The parties shall file a notice with the Court within 5 business days of a final ruling in the arbitration.

It is **SO ORDERED**.

Dated: January 25, 2019

Hon. Cathy Ann Bencivengo
United States District Judge