**BUCKLEY LLP**
JAMES R. McGUIRE (State Bar No. 189275)
jmcguire@buckleyfirm.com
LAUREN L. ERKER (State Bar No. 291019)
lerker@buckleyfirm.com
201 Mission Street, 12th Floor
San Francisco, CA 94105
Telephone: (415) 619-3500
Facsimile: (415) 619-3505

MICHAEL A. ROME (State Bar No. 272345)
mrome@buckleyfirm.com
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960

Attorneys for Defendant U.S. Bank, N.A.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNA MCGOVERN, *on Behalf of Herself and All Others Similarly Situated*, | Case No. 3:18-cv-01794-CAB-LL |
| Plaintiff, | **DEFENDANT U.S. BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| U.S. BANK, N.A. | Date:    October 28, 2020<br>Crtrm.:  4C |
| Defendant. | **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT.** |
| | The Hon. Cathy Ann Bencivengo |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 28, 2020, before the Honorable Cathy Ann Bencivengo, in Courtroom 4C of the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, Defendant U.S. Bank N.A. ("U.S. Bank"), by and through its undersigned counsel, will and does hereby move this Court for an order dismissing the First Amended Complaint filed against U.S. Bank by Plaintiff Reyna McGovern on the grounds that Plaintiff fails to state a claim for relief under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and lacks standing to seek injunctive relief under Federal Rule of Civil Procedure 12(b)(1).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, any arguments of counsel, and such other and further matters as the Court may consider.

DATED:  September 23, 2020          Respectfully submitted,

BUCKLEY LLP


By:        /s James R. McGuire
James R. McGuire
Michael A. Rome
Lauren L. Erker

Attorneys for Defendant U.S. Bank N.A.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................ 2

    A.   The Account Agreement ............................................................ 2

    B.   Fees for Transactions at Non-U.S. Bank ATMs ....................... 2

    C.   Overdrafts and Overdraft Fees .................................................. 3

    D.   Debit Card Transactions ............................................................ 4

    E.   Plaintiff's Allegations ............................................................... 5

III.    LEGAL STANDARD ......................................................................... 5

IV.     ARGUMENT ...................................................................................... 6

    A.   Plaintiff Fails to State a Claim for Breach of Contract............. 6

        1.   The FAC Does Not Allege a Breach Because the Account Agreement Authorizes U.S. Bank to Assess an OON Fee for Each "Transaction." ................................................... 7

        2.   The FAC Does Not Allege a Breach Because the Account Agreement Authorizes U.S. Bank to Assess Overdraft Fees at Settlement. ........................................................... 8

    B.   Plaintiff Fails to State a UCL Claim. ...................................... 13

        1.   Plaintiff Fails to Allege Any Actionable Misrepresentation or Omission ......................................................................... 13

        2.   Plaintiff's UCL Claims Are Preempted by the NBA. ....... 14

        3.   Plaintiff's UCL Claims Fail Because They Are Equitable Claims and Plaintiff Has an Adequate Remedy at Law. ........... 17

        4.   Plaintiff Lacks Statutory Standing ............................................. 18

        5.   Plaintiff's "Unfair" UCL Claims Fall with Her "Fraudulent" Claims. ................................................... 20

V.      Plaintiff Lacks Standing to Seek Injunctive Relief. ....................... 20

    A.   Plaintiff Lacks Standing Because She Fails to Allege Future Injury. ...................................................................................... 21

    B.   Public Injunctive Relief Is Incompatible with Article III Standing .................................................................................... 23

1

VI.    CONCLUSION ................................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018).......... 18, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................... 6

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) ............................................................. 24

*Boone v. MB Financial Bank, N.A.*,
   375 F. Supp. 3d 987 (N.D. Ill. 2019) ................................................... 9

*Brandwein v. Butler*,
   218 Cal. App. 4th 1485 (2013) .......................................................... 10

*Brinkman v. Liberty Tax Serv.*,
   No. CV 10-192-HU, 2010 WL 5158537 (D. Or. Sept. 24, 2010) ..................... 23

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
   136 F.3d 1360 (9th Cir. 1998) ........................................................... 24

*Carma Developers (Cal.), Inc., v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ...................................................................... 12

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
   631 F. 3d 939 (9th Cir. 2011) ........................................................... 21

*Choy v. Space Coast Credit Union*,
   No. 2019-CA-039839, 2020 WL 3039243 (Fla. Cir. Ct. May 11,
   2020) ............................................................................................. 9

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .............................................. 21, 22, 23, 24

*Doe v. SuccessfulMatch.com,*
    70 F. Supp. 3d 1066 (N.D. Cal. 2014)..............................................................20

*Durell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010)....................................................................6, 12

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.,*
    No. 14–cv–04809–HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19,
    2015)....................................................................................................................17

*Fernandez v. Atkins Nutritionals, Inc.,*
    No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028 (S.D. Cal. Jan. 3,
    2018)....................................................................................................................23

*In re Ford Tailgate Litig.,*
    No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014)...............17

*Forlenza v. Dynakor Pharmacal, LLC,*
    No. CV 09-3730 AG, 2009 WL 10698476 (C.D. Cal. Dec. 15, 2009)..............20

*Gomez v. Jelly Belly Candy Co.,*
    No. EDCV 17-00575-CJC(FFM), 2017 WL 8941167 (C.D. Cal.
    Aug. 18, 2017) ............................................................................................17, 18

*Gutierrez v. Wells Fargo Bank, NA,*
    704 F.3d 712 (9th Cir. 2012) ......................................................................15, 16

*Hall v. Sea World Entm't, Inc.,*
    No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911 (S.D. Cal. Dec.
    23, 2015) .............................................................................................................18

*Hauck v. Advanced Micro Devices, Inc.,*
    No. 18-CV-00447-LHK, 2019 WL 1493356 (N.D. Cal. Apr. 4,
    2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020)...................................................20

*Henderson v. Gruma Corp.,*
    No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11,
    2011) ...................................................................................................................13

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.,*
    1 F. Supp. 3d 34 (E.D.N.Y. 2014)....................................................................16

MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*Janda v. T-Mobile, USA, Inc.*,
   No. C05-03729 JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009),
   *aff'd*, 378 F. App'x 705 (9th Cir. 2010) ............................................................... 14

*Kashmiri v. Regents of Univ. of California*,
   156 Cal. App. 4th 809 (2007) ........................................................................... 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................................... 5

*Lambert v. Navy Fed. Credit Union*,
   No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14,
   2019) ................................................................................................................ 16

*Laurelwood Cleaners, LLC v. Am. Express Co.*,
   No. CV 20-6155 PA, 2020 WL 5291015 (C.D. Cal. Aug. 27, 2020) ............... 25

*Lloyd v. Navy Fed. Credit Union*,
   No. 17-CV-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12,
   2018) ................................................................................................................ 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 23

*Lussoro v. Ocean Fin. Fed. Credit Union*,
   No. 18-CV-7400 (PKC) (ST), 2020 WL 1941236 (E.D.N.Y. Apr.
   22, 2020) .......................................................................................................... 10

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2018) .............................................................. 24

*McGill v. Citibank, N.A.*,
   2 Cal 5th 945 (2017) ........................................................................................ 24

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ......................................................................... 20

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ............................................................ 17

*Philips v. Ford Motor Co.*,
   No. 14-cv-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ............. 17

*Rahman v. Mott's LLP*,
   13-CV-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 14, 2014) .......................... 23

*Roberts v. Capital One, N.A.*,
   719 F. App'x 33 (2d Cir. 2017) ........................................................... 10

*Rogers v. Lyft, Inc.*,
   20-CV-01938-VC, 2020 WL 1684151 (N.D. Cal. Apr. 7, 2020) ............... 24, 25

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir.2008) ............................................................. 16

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .............................................................. 5

*Schertzer v. Bank of Am., N.A.*,
   445 F. Supp. 3d 1058 (S.D. Cal. 2020) ............................................. 8, 13

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) ............................................................. 17

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019) .................................................... 6

*Sequeira v. Lincoln Nat'l Life Ins. Co.*,
   239 Cal. App. 4th 1438 (2015) ........................................................... 10

*Shanks v. Jarrow Formulas, Inc.*,
   No. LA CV 18-09437 PA, 2019 WL 7905745 (C.D. Cal. Dec. 27,
   2019) ........................................................................................... 21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................. 14

*Spokeo v. Robins*,
   136 S. Ct. 1540 (2016) ..................................................................... 23

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .......................................................................... 23

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................... 6

*Tabler v. Panera LLC*,
No. 19-CV-01646-LHK, 2020 WL 3544988 (N.D. Cal. June 30, 2020) ...................................................................................... 19

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
150 F. Supp. 3d 593 (D.S.C. 2015) ..................................... 16

*Vess v. Ciba–Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................. 6

*Watters v. Wachovia Bank, N.A.*,
550 U.S. 1 (2007) ............................................................... 14

*Werbel v. Pepsico, Inc.*,
No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ........... 13, 14

*Whittington v. Mobiloil Fed. Credit Union*,
No. 1:16-CV-482, 2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ................... 16

*Williams v. Apple, Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020)...........................18, 20

*Williamson v. McAfee, Inc.*,
No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ................................................................... 12

**Statutes**

12 U.S.C. § 93a ....................................................................... 15

Cal. Bus. & Prof. Code § 17200 *et seq.*.................................*passim*

**Other Authorities**

12 C.F.R. § 7.4002(a) ............................................................ 15

12 C.F.R. § 7.4002(b)(2) ....................................................... 15

12 C.F.R. § 7.4007 ................................................................ 15

12 C.F.R. § 7.4007(a) ............................................................ 15

12 C.F.R. § 7.4007(b) ............................................................ 15

Fed. R. Civ. P. 9(b) ....................................................6, 18, 19

Fed. R. Civ. P. 12(b)(1) ..........................................................................5

Fed. R. Civ. P. 12(b)(6) ..........................................................................6

Case No. 3:18-cv-01794-CAB-LL

MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

The First Amended Complaint ("FAC") charges U.S. Bank N.A. ("U.S. Bank") with assessing Plaintiff Reyna McGovern an out-of-network ATM fee and an overdraft fee purportedly prohibited by the bank's account agreement with its customers. Plaintiff's lawyers have asserted identical theories of liability against banks across the country.  But try as they might to contort U.S. Bank's account agreement to fit their theories, the plain language of that agreement permits the bank to charge the fees Plaintiff challenges.  Given the bank's clear disclosures, Plaintiff cannot state a claim.

Plaintiff first contends that U.S. Bank breached the account agreement by assessing two out-of-network fees when she checked her account balance and then withdrew cash from an out-of-network ATM.  Contrary to Plaintiff's assertion that these actions constitute one "transaction," the account agreement is clear that (i) a balance inquiry and (ii) a cash withdrawal are two separate transactions, each subject to an out-of-network ATM fee.

Plaintiff next contends that U.S. Bank should not have charged her an overdraft fee when she spent more funds than she had in her checking account.  She did so by engaging in a debit card transaction that the merchant did not present to U.S. Bank for payment until days later.  In the interim, she spent the funds needed to pay that transaction.  Plaintiff contends that because her account balance was positive when the transaction was authorized, U.S. Bank violated the account agreement by failing to "sequester" the funds needed to pay the transaction and then charging her an overdraft fee when the transaction caused her account balance to become negative.  The account agreement, however, contains no such promise to set aside funds.  To the contrary, it explicitly warns Plaintiff that U.S. Bank may charge an overdraft fee under exactly these circumstances: "***If any debit card transaction results in a negative Available Balance at the time it is presented for payment—even if your Available Balance was positive at the time the debit card transaction was authorized—you may be charged***

*an Overdraft Paid Fee.*"  (Emphasis added.)  The FAC fails to mention this language, which is dispositive of Plaintiff's second theory of breach.

In addition to her breach of contract claims, Plaintiff asserts claims for violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* These claims are based on Plaintiff's assertion that the account agreement misled her regarding when the challenged fees would be imposed, but they fail from the start given U.S. Bank's clear disclosures of when it would assess the fees.  Plaintiff's UCL claims also seek to dictate how U.S. Bank discloses the fees and are therefore preempted. Finally, they fail for the independent reasons that Plaintiff has an adequate remedy at law and lacks statutory standing.

The Court should therefore dismiss the FAC with prejudice.

## II.   FACTUAL BACKGROUND

### A.   The Account Agreement

Plaintiff alleges that she maintained a checking account and debit card with U.S. Bank.  (FAC ¶¶ 39-40.)  As Plaintiff admits, this checking account is governed by the Deposit Account Agreement ("Account Agreement").  (*Id.* ¶¶ 39, 73, Ex. 1.)  The Account Agreement expressly refers to and incorporates other account documents, including, as relevant here, the Consumer Pricing Information brochure.  (FAC Ex. 1 at 4, Ex. 2.)

Among other terms, Plaintiff agreed to pay U.S. Bank for "any overdraft amount **and** any overdraft fees charged" to her account, and acknowledged that she is responsible for "any account fees."  (FAC Ex. 1 at 6.)  The Consumer Pricing Information brochure is unambiguous that U.S. Bank will charge a Non-U.S. Bank ATM Transaction fee ("OON fee") for each "transaction" made at a non-U.S. Bank ATM ("OON ATM").  Likewise, the Account Agreement clearly discloses U.S. Bank's procedures for assessing overdraft fees on debit card transactions.

### B.   Fees for Transactions at Non-U.S. Bank ATMs

The Consumer Pricing Information brochure contains the following chart

describing how U.S. Bank assesses fees for a customer's use of an OON ATM:



| Miscellaneous Checking, Savings or Money Market Fees | |
| --- | --- |
| Account Charge-Off Processing Fee | $30.00 |
| **ATM and Debit Card Fees** | |
| **ATM Transactions** includes withdrawals, balance inquiries, denied transactions, fund transfers, and deposits | |
| U.S. Bank ATM Transaction | no charge |
| Non-U.S. Bank ATM Transaction¹ | $2.50 |
| Mini Statement at U.S. Bank ATM | $1.00 |
| Full Statement at U.S. Bank ATM | $1.50 |

(FAC Ex. 2 at 38.)  The chart provides that a balance inquiry and a withdrawal are both "ATM Transactions," and that U.S. Bank will assess a $2.50 fee for each OON "ATM Transaction."

**C.    Overdrafts and Overdraft Fees**

As the Account Agreement states, a U.S. Bank customer does not have the right to withdraw funds "that exceed the Available Balance on [her] account." (FAC Ex. 1 at 8.)  The "Available Balance" is defined to "mean[] the amount of money that can be withdrawn at a point in time" and the Account Agreement describes how the balance is calculated.  (*Id.*)  If a customer makes a transaction that exceeds her Available Balance, that is an overdraft.  (*Id.*)  U.S. Bank "can [then] either pay or return the item." (*Id.*)  If the bank receives multiple such items in a day, "and if one, some or all of them would overdraw the account if paid, [it] will post items in accordance with the 'Transaction Posting Order'" provided in the Account Agreement.  (*Id.*)  The Transaction Posting Order provision warns customers that U.S. Bank's "posting order may not be the same as the order in which you conducted a transaction and could result in overdraft fees, if you do not have available funds at the time the item is paid." (*Id.* at 6.)

U.S. Bank's option to pay items that cause a customer's Available Balance to become negative is part of its overdraft service to customers.  (*Id.* at 9.)  As relevant

here, U.S. Bank discloses in the "Our Fees" provision that it may charge an Overdraft Paid Fee ("overdraft fee") "for each item or transaction *we pay* that causes the Available Balance to become negative or occurs while the Available Balance is negative on the checking account."  (FAC Ex. 1 at 8 (emphasis added).)  U.S. Bank does not pay a merchant for a transaction until the time of settlement, which can occur days after a transaction is authorized.  (*See* FAC ¶ 70.)

### D.   Debit Card Transactions

The "Electronic Banking Agreement for Consumer Customers" portion of the Account Agreement covers transactions Plaintiff initiated with her U.S. Bank debit card.  (FAC Ex. 1 at 21.)  In the "Debit Card Transactions" section, it provides:

> When you use your  . . . Debit Card[] for payment, the merchant requests U.S. Bank to authorize the transaction amount. At the time of the request, we authorize (promise to pay) or decline the merchant's request. If we authorize (promise to pay) we will reduce your Available Balance by the amount of the merchant's authorization request. Some merchants (e.g., hotels, restaurants, gas stations, car rental agencies) request an authorization that is an estimated amount of the anticipated purchase instead of the full purchase amount. As a result, the reduction of your Available Balance may be less or greater than the final debit card transaction amount presented for payment. It is important to note that your Available Balance may change between the time a debit card transaction is authorized and when the debit card transaction is presented for payment.

> Debit card authorizations will be reflected as pending transactions from the time we receive the authorization until the merchant presents the item for payment, a completion message is received, or three business days, whichever occurs first. If the debit card authorization has not been presented for payment after three business days, it will be removed from your pending transactions and your Available Balance will no longer be reduced by the authorization amount. Due to prior authorization (promise to pay), if the debit card transaction is presented for payment at a later date we will pay the item regardless of your Available Balance.

> **If any debit card transaction results in a negative Available Balance at the time it is presented for payment—even if your Available Balance was positive at the time the debit card transaction was authorized— you may be charged an Overdraft Paid Fee.**

(FAC Ex. 1 at 22 (emphasis added).)

### E. Plaintiff's Allegations

Plaintiff alleges that on May 20, 2018, she was assessed an OON fee for checking the balance on her account and an additional OON fee for subsequently withdrawing cash at an OON ATM.  (FAC ¶ 63.)  She alleges that the Account Agreement does not permit U.S. Bank to charge two OON fees under these circumstances.  (*Id.* ¶ 64.)

Plaintiff also alleges that on December 22, 2017, she "was assessed an [overdraft] [f]ee on a debit card transaction that was initiated on an earlier date and at a time when [she] had sufficient funds in her account to cover the transaction[]."  (*Id.* ¶ 101.)  In Plaintiff's view, such transactions—that are authorized by U.S. Bank when a customer has sufficient funds in her account, but for which, because of other transactions the customer initiated, there are insufficient funds in the account by the time the merchant requests payment and the transaction posts to the account (an "authorize positive, settlement negative" or "APSN" transaction)—cannot be assessed overdraft fees under the Account Agreement.  This is because U.S. Bank purportedly promises to sequester "the funds for [the] transaction[s] . . . to pay the items when they post[]."  (*Id.*)

Based on these allegations, Plaintiff asserts claims for breach of contract and violation of the UCL.  (*Id.* ¶¶ 123-173.)  None of her claims entitle her to relief.

## III.  LEGAL STANDARD

Rule 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint.  Fed. R. Civ. P. 12(b)(1).  The party invoking jurisdiction bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Thus, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is warranted. *Id.* at 679. A complaint stating facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

UCL claims grounded in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (citation omitted); *see Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 796 (N.D. Cal. 2019) (UCL claims predicated on allegedly misleading statements subject to Rule 9(b)). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

## IV.   ARGUMENT

### A.   Plaintiff Fails to State a Claim for Breach of Contract.

To state a claim for breach of contract under California law, a plaintiff must allege (1) a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).[1] Here, Plaintiff's breach of contract

---

[1] The Account Agreement does not contain an applicable choice-of-law

1  claims fail because she has not offered any plausible allegation that U.S. Bank breached

2  its obligations under the Account Agreement.

3      **1.    The FAC Does Not Allege a Breach Because the Account Agreement Authorizes U.S. Bank to Assess an OON Fee for Each "Transaction."**

4

5      Plaintiff first challenges U.S. Bank's right to assess an OON fee for each

6  transaction she makes at an OON ATM.  (*See* FAC ¶¶ 5-6, 152.)  Specifically, she

7  contends that the Account Agreement does not permit U.S. Bank to charge a separate

8  OON fee for a balance inquiry made in conjunction with a withdrawal.  (*Id.* ¶ 152.)

9  Plaintiff's theory is rebutted by the simple fee disclosure provided by U.S. Bank.

10     As set forth in the Account Agreement, a U.S. Bank customer's agreement

11  governing her account includes the Consumer Pricing Information brochure.  (FAC Ex.

12  1 at 4.)  Plaintiff does not dispute that the brochure, which she attached to the FAC, is

13  part of her Account Agreement.  (*See* FAC ¶¶ 50-54, Ex. 2.)  The chart in that brochure

14  provides that "**ATM Transactions** includes withdrawals, balance inquiries, denied

15  transactions, funds, and deposits."  (FAC Ex. 2 at 4 (emphasis added).)  It then states

16  that the fee for a "Non-U.S. Bank ATM Transaction" is "$2.50."  (*Id.*)  Plaintiff argues

17  that the chart means that "a customer could conduct a withdrawal, balance inquiry,

18  denied transaction, fund transfer, and deposit all within the same **ATM transaction** and

19  incur only one $2.50 OON [f]ee."  (FAC ¶ 53 (emphasis added).)  Plaintiff's statement

20  of her argument reveals it flaw.  The chart does not define "ATM Transaction" as

21  Plaintiff states; instead, it uses the plural—"ATM Transactions."  The only reasonable

22  construction of the plural term is that each of the items listed—withdrawals, balance

23  inquiries, denied transactions, fund transfers, and deposits—is a separate transaction.

24  ─────────────

provision, but there are no relevant conflicts between the law of California, where
25  Plaintiff resides and opened her account, and Minnesota, where U.S. Bank is
26  headquartered, regarding the legal issues raised by the Motion.  Thus, consistent with
the FAC, U.S. Bank analyzes Plaintiff's breach of contract claim under California law.
27  (*See* FAC ¶¶ 30, 39 (alleging that Plaintiff "is a citizen of California and a resident of
28  San Diego, CA").)

Thus, when listed together, they are "ATM Transactions." The chart is then clear that a "Non-U.S. Bank ATM Transaction"—notably, not the plural "Non-U.S. Bank ATM Transaction**s**"—will incur a $2.50 fee.

Plaintiff's agreement with U.S. Bank plainly allowed it to charge her an OON fee for her May 20, 2018 balance inquiry at an OON ATM, and an additional OON fee for subsequently making a cash withdrawal. Her contorted interpretation of the straightforward chart should therefore be rejected and her breach of contract claim dismissed. *See Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1082 (S.D. Cal. 2020) (dismissing breach of contract claim alleging the same theory where similar fee chart created "no ambiguity in the Agreement's meaning because only one interpretation of the fee disclosures reasonably makes sense").

### 2. The FAC Does Not Allege a Breach Because the Account Agreement Authorizes U.S. Bank to Assess Overdraft Fees at Settlement.

Plaintiff next challenges U.S. Bank's alleged practice of assessing an overdraft fee on a debit card transaction that was authorized when a customer had sufficient funds in her account, but for which—due to other transactions the customer initiated—there were insufficient funds in the account by the time the merchant requested payment and the transaction posted to the account. (FAC ¶¶ 10-12, 74-75, 101-103, 164-165.) According to Plaintiff, there cannot have been insufficient funds at the time such a transaction posted because U.S. Bank promised to "sequester" the necessary funds when the transaction was authorized. (*Id.*) Plaintiff does not point to a provision in the Account Agreement that requires U.S. Bank to assess overdrafts at the time of authorization or to "sequester funds" for authorized debit card transactions. Nor can she—it does not exist.

Contrary to Plaintiff's assertion, the Account Agreement expressly states that U.S. Bank assesses an overdraft fee at the time U.S. Bank pays a transaction. In the "INSUFFICIENT FUNDS AND OVERDRAFTS" section, the Account Agreement provides that U.S. Bank will assess "an Overdraft Paid Fee for each item or transaction

*we pay* that causes the Available Balance to become negative or occurs while the Available Balance is negative on the checking account."  (FAC Ex. 1 at 8 (emphasis added); *see also id.* ("We reserve the right *to pay* an insufficient funds withdrawal and overdraw your account, which may result in an Overdraft Paid Fee . . . .") (emphasis added); *id.* at 6 (noting that U.S. Bank's "posting order may not be the same as the order in which you conducted a transaction and could result in overdraft fees, if you do not have available funds at the time the item is paid").)  As Plaintiff acknowledges, U.S. Bank does not pay a merchant for a transaction until the time of settlement, which can occur days after a transaction is authorized.  (*See* FAC ¶ 70, Ex. 1 at 22 (explaining that at the time of authorization for a debit card transaction, U.S. Bank either "promise[s] to pay" or "decline[s] the merchant's request" for authorization and "the transaction is presented for payment" at a separate time).)  Notably, the court in *Boone v. MB Financial Bank, N.A.*, 375 F. Supp. 3d 987, 994 (N.D. Ill. 2019), considered the same phrase—"we pay"—and concluded that it "unambiguously provide[s] that an [overdraft] occurs when [the bank] pays, and not merely authorizes, an amount in excess of [the customer's] available balance."

The Account Agreement's specific provision regarding debit card transactions—which the FAC ignores—confirms this timing.  It specifies that "**[i]f any debit card transaction results in a negative Available Balance at the time it is *presented for payment*—even if your Available Balance was positive at the time the debit card transaction was authorized—you may be charged an Overdraft Paid Fee.**"  (FAC Ex. 1 at 22 (emphasis added).)  This provision reinforces that authorization and payment of debit card transactions are separate events and that U.S. Bank assesses overdraft fees based on the Available Balance at the time it pays the merchant, not at authorization.  *See Choy v. Space Coast Credit Union*, No. 2019-CA-039839, 2020 WL 3039243, at *3 (Fla. Cir. Ct. May 11, 2020) ("'Presented for payment' logically means when the transaction is actually paid or settled, not the prior authorization.").  Plaintiff's claim that the Account Agreement "only authorizes U.S. Bank to charge [overdraft

f]ees on transactions for which sufficient funds did not exist at the time of authorization" (FAC ¶ 164), directly contradicts this plain language and thus is an unreasonable interpretation of the parties' agreement. *See Sequeira v. Lincoln Nat'l Life Ins. Co.*, 239 Cal. App. 4th 1438, 1445 (2015) ("The clear and explicit meaning of [the written] provisions [of the contract], interpreted in their ordinary and popular sense, controls judicial interpretation.") (citation omitted); *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 842 (2007) ("Courts will not strain to create an ambiguity where none exists.").

The provision also forecloses any attempt by Plaintiff to read into the Account Agreement a "promise[] to sequester the funds needed to pay" a debit card transaction at the time the transaction is authorized. (FAC ¶ 13.) If the parties intended for U.S. Bank to do that, the scenario U.S. Bank describes in the addressing "Debit Card Transactions" provision—the assessment of an overdraft fee on a debit card transaction where there are insufficient funds to pay it at the time of settlement—would not arise. (*Id.* Ex. 1 at 22.) Nor would U.S. Bank need to warn accountholders in that same provision that "[i]t is important to note that your Available Balance may change between the time a debit card transaction is authorized and when the debit card transaction is presented for payment." (*Id.*; *see also id.* at 9 (explaining that an account holder's Available Balance may become negative where "[a] debit card transaction that obtained an authoriz[ation] based on a sufficient Available Balance in your account, but is sent to us for payment later when your Available Balance is no longer sufficient to cover the item").) These provisions are improperly rendered irrelevant by Plaintiff's implausible construction of the Account Agreement.[2] *See Brandwein v. Butler*, 218

---

[2] Some federal courts have interpreted other banks' account disclosures to be ambiguous as to the timing of the assessment of overdraft fees. *See, e.g., Roberts v. Capital One, N.A.*, 719 F. App'x 33, *35 (2d Cir. 2017); *Lussoro v. Ocean Fin. Fed. Credit Union*, No. 18-CV-7400 (PKC) (ST), 2020 WL 1941236, at * 4 (E.D.N.Y. Apr. 22, 2020); *Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL

1    Cal. App. 4th 1485, 1507 (2013) ("when interpreting a contract, [courts] strive to

2    interpret the parties' agreement to give effect to all of a contract's terms, and to avoid

3    interpretations that render any portion superfluous, void or inexplicable").

4         Plaintiff's authorization and sequestration theories also make little sense given

5    the two-step authorization and posting process in place for debit card transactions, as

6    clearly described in the "Debit Card Transactions" provision.  (*See* FAC Ex. 1 at 22.)

7    Initial authorization amounts from merchants frequently differ—often substantially—

8    from the posted amounts that U.S. Bank ultimately pays, as described in that provision.

9    (*Id.* ("Some merchants (e.g., hotels, restaurants, gas stations, car rental agencies)

10   request an authorization that is an estimated amount of the anticipated purchase instead

11   of the full purchase amount.").)  This fact highlights the fundamental flaw of Plaintiff's

12   position: how can U.S. Bank sequester funds and determine if a transaction will

13   overdraw an account at the time of authorization when it does not even know how

14   much it will ultimately have to pay until settlement?

15        Plaintiff does not dispute that her December 2017 debit card transaction

16   "cause[d] the Available Balance [in her account] to become negative" when U.S. Bank

17   paid it.  (*Id.* at 8; *see* FAC ¶¶ 101-103.)  And U.S. Bank had no obligation to sequester

18   the funds needed to pay the transaction.  Therefore, under the plain language of the

19   Account Agreement, U.S. Bank was contractually permitted to assess Plaintiff an

20   overdraft fee for that transaction after Plaintiff spent the funds in her account needed to

21   pay the transaction before it was presented for payment.  Accordingly, to the extent her

22   breach of contract claim is based on the assessment of overdraft fees on APSN

23   transactions, it should be dismissed.

24

25

26   1757609, *7-8 (S.D. Cal. Apr. 12, 2018).  However, these cases are all facially
     distinguishable because none of the agreements at issue in those cases had the

27   disclosure present in U.S. Bank's Account Agreement, which expressly discloses that

28   the precise transaction Plaintiff made would result in an overdraft fee.

### 3. Plaintiff Fails to Allege a Breach Predicated on the Implied Covenant of Good Faith and Fair Dealing.

Plaintiff cannot circumvent the clear terms of her Account Agreement with U.S. Bank by relying on the implied covenant of good faith and fair dealing. An implied covenant claim fails where it is "essentially based on the same allegations" as a breach of contract. *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1369 (2010). Further, it is well-established that a plaintiff cannot use the implied covenant to create implied terms that vary express contractual terms. *Carma Developers (Cal.), Inc., v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992).

Plaintiff bases her breach of the implied covenant claims on U.S. Bank's purported abuse of its discretion to (i) categorize a balance inquiry that precedes a withdrawal as a "separate 'transaction'" in order to assess two OON fees and (ii) permit later transactions to be paid with funds "sequestered" for earlier APSN transactions in order to assess an overdraft fee. (FAC ¶¶ 154-159, 166-170.) But Plaintiff fails to identify any provision granting U.S. Bank the alleged discretion. In fact, her implied covenant claims are based on the exact same conduct she contends breached the Account Agreements—the imposition of separate OON fees for balance inquiries and overdraft fees for APSN transactions—and the exact same theory of liability—that the parties' agreement only permits U.S. Bank to charge a single OON fee for a balance inquiry preceding a withdrawal and requires U.S. Bank to make overdraft determinations only at the time a transaction is authorized, rather than when a transaction settles. (*Compare* FAC ¶¶ 152-153, 164-165 *with id.* ¶¶ 154-159, 166-170.) Accordingly, this claim should be dismissed as duplicative of Plaintiff's breach of contract claim. *See, e.g.*, *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *5 (N.D. Cal. Aug. 22, 2014) (rejecting plaintiff's argument that allegations concerning the defendant's purported exercise of discretion to set prices for auto-renewal customers under contract stated separate implied covenant claim when breach of contract claim turned on the same conduct).

1      Further, as demonstrated above, both of Plaintiff's theories of breach are at odds

2  with the clear and unambiguous terms of the Account Agreement. *See Schertzer*, 445

3  F. Supp. 3d at 1083 (dismissing implied covenant claim where the account agreement

4  gave the plaintiff "clear warnings regarding the possible imposition of balance inquiry

5  fees"). Plaintiff's implied covenant claims should be dismissed for this reason as well.

6      **B.**    **Plaintiff Fails to State a UCL Claim.**

7      Plaintiff asserts "fraudulent" and "unfair" UCL claims predicated on her

8  allegations that U.S. Bank's Account Agreement misleads consumers regarding its

9  assessment of OON fees on balance inquiries made at an OON ATM and overdraft fees

10  on APSN debit card transactions. (*See* FAC ¶¶ 123-149.) As set forth below, these

11  claims fail for several independent reasons.

12      **1.**    **Plaintiff Fails to Allege Any Actionable Misrepresentation or Omission.**

13

14      The first hurdle that Plaintiff faces is that she fails to allege an actionable

15  misrepresentation or omission. Contrary to Plaintiff's assertions, neither the Account

16  Agreement nor the additional disclosures identified by Plaintiff "are likely to deceive a

17  reasonable consumer." *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx),

18  2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011) (citing *Freeman v. Time, Inc.*, 68

19  F.3d 285, 289 (9th Cir. 1995)).

20      "[W]here a court can conclude as a matter of law that members of the public are

21  not likely to be deceived" by allegedly misleading statements, dismissal of a UCL

22  claim is proper. *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at

23  *3 (N.D. Cal. July 2, 2010). For the same reasons Plaintiff does not allege a breach of

24  contract, it is not likely that a reasonable U.S. Bank customer would have understood

25  that U.S. Bank was promising not to assess an OON fee for a balance inquiry preceding

26  a withdrawal at an OON ATM or an overdraft fee for a debit card transaction where the

27  customer spent the funds needed to pay for the transaction before the transaction was

28  paid. (*See supra* § IV.A.) First, the Consumer Pricing Information disclosure makes

1   clear that U.S. Bank will assess a separate OON fee for a balance inquiry preceding a

2   withdrawal at an OON ATM.[3]  (*See supra* § IV.A.1.)  Second, the Account Agreement

3   explicitly warns customers that "[i]f any debit card transaction results in a negative

4   Available Balance at the time it is *presented for payment*—even if your Available

5   Balance was positive at the time the debit card transaction was authorized—you may be

6   charged an Overdraft Paid Fee."  (FAC Ex. 1 at 22 (emphasis added); *see supra* §

7   IV.A.2.)  U.S. Bank's clear disclosures thus foreclose Plaintiff from asserting that a

8   reasonable consumer would have been misled by those disclosures.  *See, e.g., In re*

9   *Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 990

10  (S.D. Cal. 2014) (allegedly misleading marketing materials were not actionable under

11  the UCL where the parties' agreement clearly refuted the plaintiffs' alleged

12  understanding of the materials); *Janda v. T-Mobile, USA, Inc.*, No. C05-03729 JSW,

13  2009 WL 667206, at *6-9 (N.D. Cal. Mar. 13, 2009), *aff'd*, 378 F. App'x 705 (9th Cir.

14  2010) (dismissing UCL claim where the challenged fees allegedly omitted from the

15  defendant's advertising were disclosed in the parties' agreement).

16  ## 2.    Plaintiff's UCL Claims Are Preempted by the NBA.

17  Next, Plaintiff's UCL claims are preempted because they seek to dictate how

18  U.S. Bank discloses its OON and overdraft fees.  U.S. Bank is, and is specifically

19  alleged to be, a national bank.  (FAC ¶ 31.)  It is well settled that the "[b]usiness

20  activities of national banks are controlled by the [National Bank Act ('NBA')]," and

21  "regulations promulgated thereunder by the [Office of the Comptroller of the Currency

22  ('OCC')]," "the agency charged by Congress with supervision of the NBA."  *Watters v.*

---

24  [3] To the extent Plaintiff contends that the Simple Snapshot disclosure is misleading because it does not disclose U.S. Bank's OON fee practices (FAC ¶¶ 43-

25  49), that claim fails because, as the document explains and Plaintiff concedes, the Simple Snapshot disclosure purports to provide only "common checking-related fees,"

26  not every fee, and directs the customer to the Account Agreement and Consumer

27  Pricing Information disclosure "for a complete list of account terms, policies, and

28  pricing" (*id.* at 40).

*Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007); *see* 12 U.S.C. § 93a.  The NBA and OCC regulations preempt any state law or cause of action that "prevent[s] or significantly interfere[s] with the national bank's exercise of its powers." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012) (quoting *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)).  Plaintiff's UCL claims aim to do exactly that.

The OCC, in implementing the NBA, has enacted regulations that expressly and impliedly preempt Plaintiff's UCL claims.  Under 12 C.F.R. § 7.4007, "[a] national bank may receive deposits and engage in any activity incidental to receiving deposits." 12 C.F.R. § 7.4007(a).  This regulation provides:  "[a] national bank may exercise its deposit-taking powers *without regard to state law limitations* concerning . . . (2) [c]hecking accounts; [and] (3) [d]isclosure requirements." *Id.* § 7.4007(b) (emphasis added).  OCC regulations also authorize national banks to "charge [their] customers non-interest charges and fees, including deposit account service charges." *Id.* § 7.4002(a).  The establishment of such "non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* § 7.4002(b)(2).

Despite these regulations, Plaintiff has asserted UCL claims directly aimed at U.S. Bank's disclosures, and which significantly interfere with U.S. Bank's exercise of its federally prescribed powers.  Indeed, the crux of the FAC is that U.S. Bank did not specifically disclose that an accountholder would be assessed (i) two OON fees for checking her account balance prior to withdrawing funds at an OON ATM and (ii) an overdraft fee for an APSN debit card transaction.  (*See, e.g.*, FAC ¶ 6 ("U.S. Bank **does not warn** consumers that when accountholders check their account balance prior to withdrawing funds at an out-of- network ATM, U.S. Bank will charge two OON Fees on the single ATM use—one for the balance inquiry, and one for the withdrawal.) (emphasis added); *id*. ¶ 21 ("U.S. Bank's **failure to disclose** this practice [of charging overdraft fees on transactions that have not overdrawn an account] in the disclosures

and marketing materials it makes available to the public to assist consumers in deciding whether to bank with U.S. Bank or some other financial institution is an unfair, deceptive, and misleading business practice.") (emphasis added); *id.* ¶ 129 ("Specifically, U.S. Bank **failed to disclose** that a balance inquiry that immediately precedes a withdrawal will incur an additional OON Fee.  U.S. Bank **also failed to disclose** that consumers may be charged multiple OON Fees by U.S. Bank for a single use of an out of network ATM.") (emphasis added); ¶ 147 ("U.S. Bank's conduct was substantially injurious to consumers in that they have been forced to pay OD Fees, which **are not disclosed** in their contract with U.S. Bank.") (emphasis added).)

In situations such as this, courts have routinely found that state-law causes of action challenging a national bank's disclosures are preempted by the NBA and OCC's regulations.  *See, e.g.*, *Gutierrez*, 704 F.3d at 726 (finding that "[i]mposing liability for [a] bank's failure to sufficiently disclose its posting method leads to the same result as mandating specific disclosures," both of which are "tantamount to state regulation of disclosure requirements"); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1027-28 (9th Cir.2008) (finding plaintiff's UCL claims for failure to make disclosures relating to "convenience checks" were preempted by the NBA); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 612 (D.S.C. 2015) (plaintiffs' claims seeking specific disclosures of national bank's overdraft practices were preempted); *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 48 (E.D.N.Y. 2014) ("inasmuch as the Plaintiffs seek to impose liability on HSBC for the bank's failure to sufficiently disclose its posting method, that argument is preempted").[4]

---

[4] Courts have reached the same result regarding federally chartered credit unions under the Federal Credit Union Act and Truth in Savings Act.  *See, e.g.*, *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019) (state-law claims regarding a "failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted"); *Whittington v. Mobiloil Fed. Credit Union,* No. 1:16-CV-482, 2017 WL 6988193, at *7-11 (E.D. Tex. Sept. 14, 2017) (finding consumer protection statute claim preempted

1   To the extent Plaintiff attempts to circumvent federal preemption by arguing that

2   her claims are based on affirmative misrepresentations in U.S. Bank's disclosures, this

3   argument fails.  As discussed, U.S. Bank did exactly what it said it would do in the

4   Account Agreement—assess an OON fee for each transaction at an OON ATM and an

5   overdraft fee for each debit card transaction that "cause[d] the Available Balance to

6   become negative or occurred while the Available Balance is negative on a checking

7   account."  (FAC Ex. 1 at 8, 2 at 38.)  The FAC gives rise to no inference that U.S. Bank

8   did anything different than what it disclosed.  (*See supra* § IV.A.2.)

9        **3.      Plaintiff's UCL Claims Fail Because They Are Equitable
             Claims and Plaintiff Has an Adequate Remedy at Law.**

10

11   The UCL provides for equitable relief, which is "not appropriate" when the

12   plaintiff has "an adequate remedy [] at law."  *Schroeder v. United States*, 569 F.3d 956,

13   963 (9th Cir. 2009); *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14–cv–04809–

14   HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015) ("Apart from civil penalties,

15   which are not at issue here, the UCL and FAL provide for only equitable relief.").

16   Where an equitable relief claim "relies upon the same factual predicates as a plaintiff's

17   legal causes of action, it is not a true alternative theory of relief but rather is duplicative

18   of those legal causes of action." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014

19   WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (citation omitted).  "It matters not that a

20   plaintiff may have no remedy if her other claims fail."  *Munning v. Gap, Inc.*, 238 F.

21   Supp. 3d 1195, 1203 (N.D. Cal. 2017).  For these reasons, courts routinely dismiss

22   UCL claims that rely on the same factual predicate as alleged legal claims.  *See, e.g.*,

23   *Gomez v. Jelly Belly Candy Co.*, No. EDCV 17-00575-CJC(FFM), 2017 WL 8941167,

24   at *2 (C.D. Cal. Aug. 18, 2017) (dismissing UCL claim with prejudice where based on

25   the same conduct as negligent misrepresentation claim); *Philips v. Ford Motor Co.*, No.

26   14-cv-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (dismissing

27   _____

28   to the extent it was premised on failure to make disclosures).

1  plaintiffs' UCL claim because plaintiffs had an adequate remedy at law).

2       Here, the same breach of contract allegation underlies both of Plaintiff's UCL

3  claims.  (*See, e.g.*, FAC ¶ 129 (alleging that U.S. Bank's disclosures misled the public

4  regarding its OON fee practices in the Account Agreement); *id.* ¶ 144 (same as to

5  overdraft fees on APSN transactions).)  Yet nowhere does Plaintiff allege any facts

6  suggesting that damages for breach of contract would be inadequate in the absence of

7  equitable relief.  *See Gomez*, 2017 WL 8941167, at *1-2 (a plaintiff seeking equitable

8  relief must "allege some facts suggesting that damages are insufficient to make them

9  whole").  Accordingly, dismissal of Plaintiff's duplicative UCL claims is appropriate.

10            **4.    Plaintiff Lacks Statutory Standing.**

11       Plaintiff cannot challenge U.S. Bank's allegedly misleading disclosures

12  regarding the assessment of OON fees on balance inquiries at OON ATMs and

13  overdraft fees on APSN debit card transactions because she fails to adequately allege

14  reliance.  To establish statutory standing under the UCL for both "fraudulent" and

15  "unfair" claims premised on misleading statements, whether affirmative

16  misrepresentations or omissions, a plaintiff must plead actual reliance on an allegedly

17  deceptive or misleading statement.  *In re Arris Cable Modem Consumer Litig.*, No. 17-

18  CV-01834-LHK, 2018 WL 288085, at *6, 8 (N.D. Cal. Jan. 4, 2018).  Further, to meet

19  the requirements of Rule 9(b), the plaintiff must specify which "statements the plaintiff

20  actually saw and relied upon." *Id.* at *8; *see Williams v. Apple, Inc.*, 449 F. Supp. 3d

21  892, 913 (N.D. Cal. 2020) ("[T]o make the reliance showing, . . . plaintiffs in

22  misrepresentation cases must allege that they actually read the challenged

23  representations.") (citation omitted).  As with misrepresentations, to establish reliance

24  on an omission, "a plaintiff must show that had the omitted information been disclosed,

25  one would have been aware of it and behaved differently." *Hall v. Sea World Entm't,*

26  *Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015)

27  (citation omitted).

28       Plaintiff asserts that the Account Agreement and Consumer Pricing Information

and Simple Snapshot disclosures misled consumers regarding how U.S. Bank will assess fees for their use of OON ATMS.  (FAC ¶¶ 5-6, 43-57.)  Plaintiff also claims that the same documents misled consumers into believing that they would not be assessed overdraft fees on APSN debit card transactions.  (*Id.* ¶¶ 74-76, 78-91.)  Plaintiff does not allege, however, that she reviewed the *Account Agreement or the other two U.S. Bank disclosures* attached to the FAC *prior* to opening her account or incurring the complained-of fees.  Instead, she repeatedly claims that she "received and reviewed the materials provided by U.S. Bank."  (*Id.* ¶¶ 62, 100, 130, 144.)  But this allegation does not suffice to adequately plead reliance because Plaintiff conspicuously fails to state when she reviewed these "materials" and that they are the same disclosures on which she predicates her UCL claims.  *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *8 (N.D. Cal. June 30, 2020) (plaintiff failed to allege reliance with the required specificity where she did not "specify *when* she viewed and relied on the advertisements in making her purchasing decisions") (emphasis added); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8-9 ("[T]his Court and other courts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon.").

Nor does Plaintiff plausibly plead that, had the allegedly omitted information been disclosed in the unspecified "materials," she would have behaved differently.  Plaintiff alleges that she "would not have opened her account, or would have avoided checking her balance prior to withdrawing funds at the [OON] ATM, had she been informed in any of the documents provided she would be charged two OON Fees by U.S. Bank for doing so."  (FAC ¶ 65.)  Similarly, she alleges that had she "known she would be charged [overdraft] [f]ees against debit card transactions that did not overdraw her account, she would not have opened an account with U.S. Bank, or would have avoided making such transactions with her debit card."  (*Id.* ¶ 104.)  But Plaintiff's continued use of her U.S. Bank account after incurring the complained-of

fees (*see id.* ¶ 39) belies her conclusory allegations that she would have "behaved differently" when opening her account if she had known of the complained-of fee practices. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) (noting that where "Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under [] the UCL"); *Forlenza v. Dynakor Pharmacal, LLC*, No. CV 09-3730 AG (SSx), 2009 WL 10698476, at *3 (C.D. Cal. Dec. 15, 2009) (plaintiffs cannot "show reasonable reliance on [a defendant's] statements . . . when they continued to purchase the products after they knew the advertisements were false").

### 5. Plaintiff's "Unfair" UCL Claims Fall with Her "Fraudulent" Claims.

The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Where the "plaintiffs' unfair prong claim[] overlap[s] entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive." *Williams*, 449 F. Supp. 3d at 910 (citation omitted). Here, Plaintiff did not identify any "unfair" conduct apart from U.S. Bank's allegedly misleading disclosures. (*See* FAC ¶¶ 131-133, 145-147.) Her unfair prong claims therefore "overlap entirely" with her fraudulent prong claims and should be dismissed. *See, e.g., Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2019 WL 1493356, at *15 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020) (dismissing UCL unfair claim where premised on the defendant's allegedly fraudulent omissions).

### V. Plaintiff Lacks Standing to Seek Injunctive Relief.

Plaintiff purports to seek injunctive relief "on behalf of herself, the Injunctive Relief Class . . . , and the public" to prohibit U.S. Bank from making misleading disclosures regarding its fees. (FAC ¶ 118.) She lacks Article III standing to do so. In the Court's January 25, 2019 Order Granting Motion to Compel Arbitration

("Arbitration Order") (ECF No. 28), it reached the same conclusion specifically as to Plaintiff's request for *public* injunctive relief.  The Court's decision was correct and it should dismiss Plaintiff's requests for injunctive relief, both public and private.

### A.     Plaintiff Lacks Standing Because She Fails to Allege Future Injury.

Plaintiff lacks standing to seek an injunction of any kind, private or public, because she has not pled any facts establishing any reason to believe she will be wronged in a similar way in the future.  "To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that [s]he will be wronged again." *Shanks v. Jarrow Formulas, Inc.*, No. LA CV 18-09437 PA (AFMx), 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (quoting *Rahman v. Mott's LLP*, 13-CV-3482 SI, 2014 WL 5282106, at *5 (N.D. Cal. Oct. 14, 2014); *see Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F. 3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must demonstrate a real and immediate threat of repeated injury in the future.") (citation omitted).  Plaintiff's alleged injuries giving rise to her request for injunctive relief stem from representations in the Account Agreement between Plaintiff and U.S. Bank, which Plaintiff claims deceived her into opening an account with U.S. Bank and incurring the challenged OON and overdraft fees.  (FAC ¶¶ 62, 100-104.)  Plaintiff has not alleged any factual scenario in which she would receive these exact same disclosures again in a context that would induce her to act in a similar way, or that she is aware of concrete or imminent circumstances that will cause her to incur the challenged fees in the future.

The Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), only highlights why there is no credible threat of future harm here sufficient to confer standing.  The *Davidson* plaintiff alleged that the "flushable" label on a package of personal cleansing wipes was deceptive.  The defendant in that case argued that the plaintiff had no standing to seek an injunction because she had been previously deceived by the product, and thus could not be harmed again in the future. The Ninth Circuit rejected that categorical argument, explaining that it was "not

persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Id.* at 970 (emphasis in original). It then held that the plaintiff had standing because she sufficiently alleged that she intended to regularly repurchase the wipes, "but has 'no way of determining whether the representation "flushable" is in fact true.'" *Id.* at 970-71.

The Ninth Circuit also provided guidance to district courts by discussing the kinds of allegations that would be sufficient to confer standing in similar cases:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to . . . . In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969-70.

Plaintiff in this case alleges no such facts—nor could she. She has an account agreement with a bank, not a consumer product to be repeatedly purchased at regular intervals. Plaintiff has not alleged that she regularly is presented with new U.S. Bank account agreements with the same language, such that she would again be in a situation in which she had to decide whether to open an account with U.S. Bank, or that there is any concrete risk of her checking her account balance at an OON ATM or overdrawing her account in the future in a manner that would trigger the same charges at issue in this case. Nor could she credibly do so, as she now is fully on notice of the meaning of the language in the Account Agreement she claims to have been deceived by in the first place.[5] As other courts distinguishing *Davidson* have similarly concluded, that places her on wholly different footing from a plaintiff who needs to be able to rely in the future

---

[5] Moreover, U.S. Bank has amended the language in the Account Agreement challenged by the FAC. *See* Your Deposit Account Agreement & General Terms & Conditions Electronic Transfers Funds Availability, *https://www.usbank.com/pdf/ Deposit-Account-Agreement.pdf* (last accessed Sept. 16, 2020).

on whether a particular label is true or not.  *See, e.g., Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028, at \*14-15 (S.D. Cal. Jan. 3, 2018) (finding no standing to seek injunction because the plaintiff had not alleged a desire to purchase the products in the future and "now has knowledge that enables her to make an appropriate choice with respect to" the defendant's products); *Rahman*, 2018 WL 4585024, at \*6 (finding no standing to pursue injunction in a deceptive labeling case because "whatever his prior state of knowledge, [the plaintiff] is now fully aware" of the meaning of the product label, and thus could not establish a future threat of cognizable harm).  The Court should follow those decisions and hold that Plaintiff has not and cannot establish a future threat of cognizable harm sufficient to confer standing to seek an injunction.

## B.  Public Injunctive Relief Is Incompatible with Article III Standing.

Plaintiff lacks standing to seek a *public* injunction for the additional reason that, as the Court correctly concluded, Plaintiff cannot establish redressability given the nature and purpose of public injunctive relief.  "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 889 F.3d at 967.  To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61).  The concept of redressability "has been ingrained in our jurisprudence from the beginning," the point of which is to determine "whether a plaintiff personally would benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (citation omitted).  "**It is not enough that a favorable judgment will benefit the public at large**." *Brinkman v. Liberty Tax Serv.*, No. CV 10-192-HU, 2010 WL 5158537, at \*2 (D. Or. Sept. 24, 2010) (emphasis added) (quoting *Steel Co.*, 523 U.S. at 107).

As the Court correctly held in the Arbitration Order, "[b]ased on the definition" of public injunctive relief "provided by the California Supreme Court," Plaintiff cannot satisfy the redressability component of the Article III standing test. (Arbitration Order at 8:11.)  In *McGill*, the California Supreme Court took great pains to explain the characteristics of true public injunctive relief claims (as compared to private injunctions), explaining that while "public injunctive relief . . . is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public . . . [r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill v. Citibank, N.A.*, 2 Cal 5th 945, 955 (2017) (quoting *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1077 (1999)).  Given that the purpose of public injunctive relief "is not to resolve a private dispute, but to remedy a public wrong," *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900-01 (N.D. Cal. 2018), to the extent Plaintiff seeks a *public* injunction, such an injunction cannot provide her with a tangible benefit beyond what she would receive as a member of the general public.  That is insufficient to satisfy the redressability component of the Article III standing inquiry. (*See* Arbitration Order at 8:22-25.)

This Court is not the only court to conclude that *public* injunctive relief as defined under California law is inherently incompatible with Article III standing.[6]  In *Rogers v. Lyft, Inc.*, 20-CV-01938-VC, 2020 WL 1684151 (N.D. Cal. Apr. 7, 2020),

---

[6] The Ninth Circuit has not addressed this question.  In *Davidson*, there were no allegations that the plaintiff sought a *public* injunction and the court did not consider whether the injunction she sought was in fact public.  *See* 889 F.3d at 966-72.  In *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), the court did not address standing at all, as the issue was not raised below or in the appellate briefing.  *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir. 1998) (holding that because the Supreme Court "did not expressly address the question of standing" in a certain decision, that decision "does not constitute binding authority with respect to standing").

Judge Chhabria remanded a claim for public injunctive relief to state court after posing and succinctly answering the relevant question also before this Court: "[T]he question presented is whether the plaintiffs can invoke federal-court jurisdiction to adjudicate only a request for a public injunction.  The answer is no." *Id.* at *9.  In reaching this conclusion, Judge Chhabria explained that while "Plaintiffs may sometimes request public injunctive relief in the course of combating an actual and imminent threat of future harm to themselves . . . they may not invoke state law to use the federal courts merely to pursue a generalized public grievance." *Id.*  And in *Laurelwood Cleaners, LLC v. Am. Express Co.*, No. CV 20-6155 PA (AGRx), 2020 WL 5291015, at *3-4 (C.D. Cal. Aug. 27, 2020), Judge Anderson found that reasoning persuasive, likewise remanding the plaintiff's claim for public injunctive relief for lack of standing.  Here, Plaintiff alleges that her public injunctive relief claim is based merely on a "generalized public grievance" and not an "actual and imminent threat of future harm to [Plaintiff]." *Rogers*, 2020 WL 1684151, at *9; (*see* FAC ¶ 120 ("The injunctive relief sought by Plaintiff will protect the *public* from U.S. Bank's deceitful marketing practices.") (emphasis added)).  Accordingly, she lacks Article III standing to pursue this claim in federal court.

## VI.   CONCLUSION

For the reasons stated above, U.S. Bank respectfully requests that the Court dismiss Plaintiff's FAC with prejudice.

DATED:  September 23, 2020          BUCKLEY LLP

By:    /s James R. McGuire
        James R. McGuire
        Michael A. Rome
        Lauren L. Erker

        Attorneys for Defendant U.S. Bank, N.A.